JAMES W. DUNN *v.* STATE OF INDIANA.

[No. 1171S319. Filed March 6, 1973.]

*Michael J. McDaniel, Donald R. Forrest,* of New Albany, for appellant.

*Theodore L. Sendak,* Attorney General, *John McArdle,* Deputy Attorney General, for appellee.

ARTERBURN, C.J.—Defendant-Appellant, James W. Dunn, was charged by indictment with first degree murder in the death of Morris Willhite. He was found guilty after trial by jury in the Circuit Court of Floyd County and received a sentence of life imprisonment.

In seeking a reversal of his conviction, Appellant maintains *inter alia,* that the jury's verdict was not sustained by sufficient evidence. When reviewing the sufficiency of the evidence, this Court will neither weigh the evidence nor determine the credibility of witnesses. *Lee* v. *State* (1972), 259 Ind. 301, 286 N. E. 2d 840; *Wardlaw* v. *State* (1972), 259 Ind. 282, 286 N. E. 2d 649; *Capps* v. *State* (1972), 258 Ind. 565, 282 N. E. 2d 833; *Gunn* v. *State* (1972), 258 Ind. 374, 281 N. E. 2d 484. Only that evidence most favorable to the Appellee and all reasonable inferences to be drawn therefrom will be considered. *Id.* If there is substantial evidence of probative value sufficient to establish every material element of the crime beyond a reasonable doubt, the verdict will not be disturbed. *Id.* A brief chronological review of only that evidence favorable to the State reveals the following facts.

On Tuesday, November 3, 1970, Appellant borrowed a .22 caliber rifle from Jack Joe Lynch, a neighbor and co-

worker. The weapon could be operated only as a single shot rifle since its ammunition clip was missing.

On Thursday, November 5, 1970, the deceased, Morris Willhite, failed to return from one of his customary walks in the Silver Creek area near his home in Floyd County. Late that same afternoon, Appellant gave his wife $21, claiming that it was earnings from a job; however, Appellant was, in fact, unemployed at that time.

On Friday, November 6, 1970, Edward Cassady, who was fishing on Muskrat Creek in the Silver Creek area near Clarksville, Indiana, engaged in a conversation with a man who identified himself as James Dunn. Cassady testified that Dunn left the area where he was fishing but returned 10 to 15 minutes later, armed with a small caliber rifle, and demanded Cassady's billfold. When Cassady refused to turn over his billfold, he was attacked by Dunn who began beating him about the face and head with the rifle butt. Despite the fact that he ultimately suffered both a fractured skull and a bullet would in the head, Cassady never lost consciousness and testified that he felt his billfold being removed from his pocket.

At approximately the same time that Cassady was being attacked and robbed, the deceased's wife, brother, sister-in-law and niece were driving along the backwaters of the Ohio River in the Silver Creek area in search of Willhite who then had been missing for one day. They testified that they observed from their moving automobile, at a distance of 60 feet, a man, subsequently identified by them as Appellant, standing over another man (presumably Cassady) who was lying upon the ground. The man who was standing appeared to be holding a rifle. Although the deceased's niece testified that she stated, at the time she observed this scene, that she thought that the man who was standing may have shot the other man, the deceased's relatives proceeded without stopping and did not notify the police of what they had seen until

several days later when someone at the funeral home mentioned the attack upon Edward Cassady.

Edward Cassady was subsequently found by a passerby, Clarksville police officers were summoned, and he was removed to a local hospital. Prior to being taken to the hospital, he identified his assailant as the Appellant, James Dunn. Due to the extent and nature of his injuries, the bullet fragments in his head were never removed.

On Saturday morning, November 7, 1970, Clarksville police officers investigating the scene of the attack upon Edward Cassady discovered an appointment slip bearing the name of the decedent Morris Willhite. Since the appointment slip appeared to be of no relevance, it was discarded. After learning of the death of Morris Willhite, however, the Clarksville police returned to the scene of the attack upon Edward Cassady and located the deceased's billfold, union card and identification card. These items were scattered as if they had been thrown from the roadway or from a passing automobile. The discovery of the effects of Morris Willhite at the scene of the Cassady attack suggests that Willhite had been murdered before the attack on Cassady took place.

At approximately the same time that Clarksville police were searching the area of the Cassady attack on November 7, 1970, Morris Willhite's body was discovered and the New Albany police were summoned. Although the record does not reveal the exact proximity of the body of Willhite and its relationship to the scene of the Cassady attack, both were within the Silver Creek area near the Ohio River between New Albany and Clarksville. When he was found, the deceased exhibited face and head injuries such as would result from a fall or a beating; however, it was subsequently determined that death was caused by a head wound from a small caliber bullet. Neither the time of death nor the exact caliber of bullet was determined. Although there was evidence that death had occurred elsewhere and the body had been dragged

to the spot where it was discovered, no testimony was offered which would suggest where Willhite had been killed. Moreover, the murder weapon was never located.

Contemporaneous with the discovery of the appointment slip of Morris Willhite by the Clarksville police at the scene of the Cassady attack, and the investigation of the death of Morris Willhite by the New Albany police, Appellant was informing Jack Joe Lynch that the .22 caliber rifle that he had borrowed on Tuesday, November 3, 1970, had been stolen from his automobile that morning, Saturday, November 7, 1970. While he was in the custody of the New Albany police later that same day, however, Appellant had another conversation with Lynch at which time he stated that Lynch's rifle had actually been stolen the same day that he borrowed it, Tuesday, November 3, 1970.

No direct evidence was introduced to show that Appellant was responsible for the death of Morris Willhite. The State's evidence tends to establish nothing more than a mere suspicion of guilt. It is clearly insufficient to support a conviction for first degree murder. *See Banks* v. *State* (1971), 257 Ind. 530, 276 N. E. 2d 155, 158; *Seats* v. *State* (1970), 254 Ind. 457, 463-64, 260 N. E. 2d 796, 799-800; *Reynolds* v. *State* (1970), 254 Ind. 478, 482-83, 260 N. E. 2d 793, 795; *See also Gunn* v. *State* (1972), 258 Ind. 374, 376, 281 N. E. 2d 484, 485; *Vaughn* v. *State* (1971), 255 Ind. 678, 266 N. E. 2d 219, 220. Although the State maintained that Willhite had been shot with the .22 caliber rifle Appellant borrowed from Jack Joe Lynch, there was no evidence offered as to the caliber of the bullet taken from Willhite's body. Further, there is no testimony in the record placing Appellant in the Silver Creek area on the day Willhite failed to return from his walk; there is no evidence to establish the approximate time of the death of Morris Willhite; and, while the billfold and effects of the deceased were found in the near vicinity of the attack upon Cassady, there is no evidence to suggest that they were left there by James Dunn or that Dunn at anytime possessed them.

In sum, we are here presented with a case analogous to *Manlove* v. *State* (1968), 250 Ind. 70, 232 N. E. 2d 874, in which Justice Hunter commented:

> "If the evidence merely tends to establish a suspicion of guilt, or the mere opportunity to do so [commit the offense] it is clearly insufficient to sustain the conviction. . . . If mere opportunity or suspicion are sufficient to convict an accused of a felonious homicide or murder . . . then the life and liberty of many innocent people may be summarily sacrificed. The law requires substantial evidence to prove guilt beyond a reasonable doubt. We cannot predicate an affirmance of guilt upon mere possibility because of opportunity or suspicion. . . ." *Id.* at 83, 232 N. E. 2d at 881 (citations omitted).

Applying the *Manlove* criteria and other tests of this Court for reviewing a conviction based upon circumstantial evidence, we find the evidence is lacking to connect Appellant with the crime.

In reaching this determination, we have had occasion to consider a declaration made by Appellant while in the custody of the Clarksville police. The accused stated: "don't know what this [the Cassady incident] is all about, but I also heard that the New Albany police were looking for me for a shooting." The importance of this declaration is alleged to be that when Appellant made it, no one was aware of the fact that Willhite had suffered a bullet wound since the cause of death had not yet been established.

Taken in the context of the events of the day of his arrest, however, we find that Appellant's statement is of minimal significance and that it is quite possible that he was merely confused or misunderstood. We must reject the contention that this statement demonstrates the existence of evidence sufficient to support a conviction for first degree murder.

During the course of trial, Appellant filed appropriate motions for a directed verdict which were overruled by the trial court. We reverse the judgment of the trial court and find that the rejection of Appellant's motion for a directed verdict

148

was error. Since there is no indication in the transcript to suggest that the evidential deficiencies in this case might be cured on retrial, we direct the trial court to discharge the defendant. *Banks* v. *State* (1971), 257 Ind. 530, 276 N. E. 2d 155, 160; *Manlove* v. *State* (1968), 250 Ind. 70, 84, 232 N. E. 2d 874, 882.

Appellant has alleged other errors, however, in view of our holding, we do not deem it necessary to deal with them.

Judgment reversed with directions to discharge defendant.

All Justices concur.

NOTE.—Reported in 293 N. E. 2d 32.