IN THE MATTER OF PUBLIC LAW NO. 305 AND PUBLIC LAW NO. 309 OF THE INDIANA ACTS OF 1975.

[No. 975S240. Filed September 19, 1975.]

508

GIVAN, C.J.—The 99th Indiana General Assembly passed Senate Enrolled Act No. 441, which became Public Law No. 305 of the Acts of 1975 (IC 33-10.5-1 *et seq.*). It also passed Senate Enrolled Act No. 351, which became Public Law No. 309 of the Acts of 1975 (IC 33-5-43-1 *et seq.*). Public Law No. 305 provides for the establishment of "small claims docket" in certain circuit and superior courts and provides for the establishment of a "county court" in certain counties. Public Law No. 309 provides for an amendment to the Act establishing the Vanderburgh Superior Court. Senate Enrolled Act No. 89, which became Public Law No. 313 (IC 33-11.6-4-11) provides for small claims courts in counties having cities of the first class. Senate Enrolled Act No. 136, which became Public Law No. 311 (IC 33-5-45.5-1 *et seq.*) establishes a superior court in Warrick County.

Public Law No. 313 is mentioned here only because of a provision for the taking of judicial notice of ordinances. The

court provided for in that Act is entirely different from the courts provided for in Public Laws 305 and 309, thus other questions and comments in this opinion are not addressed to Public Law No. 313. We acknowledge that existence of Public Law No. 313 is a deviation from the legislative attempt at uniformity of small claims litigation. However, such deviation is constitutionally acceptable in that it does not confound the existing court system. The courts created by this Act are not courts of record. Their decisions are subject to *de novo* review in the circuit and superior court of the county.

Public Law No. 311 is mentioned here only because of a difference in date of transfer of the "small claims" cases to the Warrick Superior Court.

Article 7, § 14 of the Indiana Constitution of 1851 provided for the election of justices of the peace by the voters in each township of the several counties. Traditionally, those justices of the peace handled small civil claims and exercised misdemeanor criminal jurisdiction. On November 3, 1970, the voters of Indiana adopted an extensive amendment to Article 7 of the Constitution which, among other things, eliminated the reference to the office of justice of the peace. The 1975 General Assembly passed Public Law No. 305 in order to provide for the handling of the cases previously decided by the justices of the peace. Public Law No. 309 must also be dealt with in this opinion because it establishes a small claims division of the Superior Court of Vanderburgh County

On August 1 of this year this Court rendered an opinion concerning Public Law No. 305. In that opinion we observed that traditionally the Supreme Court does not issue opinions *sua sponte*. However, in a situation presented by Public Law No. 305, where certain duties of administration devolved to this Court, it has become necessary in order to carry out the legislative mandate in a uniform manner, for this Court to pass upon certain questions concerning the statute before

it is to go into full force and effect on January 1, 1976. The public generally, and the judiciary specifically, would be rendered a great disservice if this Court remained silent at this time and permitted this Act to go into effect with the probability of several different interpretations by the trial courts throughout the State, thus giving rise to a state of confusion and lack of uniformity throughout the State's judicial system.

In raising and answering the following questions in this opinion, it is not the purpose of this Court to invade the province of the legislature, nor do we intend to be critical of the legislature. In passing these acts, the legislature has diligently and intelligently addressed itself to a difficult situation. The duty now devolves upon this Court to address itself to the legislative intent demonstrated in these acts and to aid the statewide judiciary in carrying out that intent with a maximum of efficiency and uniformity.

Question 1. Is the provision in Public Law No. 305, which requires the county courts to take judicial notice of municipal, city and town ordinances (IC 33-10.5-7-4), a valid provision? provision?

A similar provision is contained in Public Law No. 309 (IC 33-5-43.1-12). The above-noted provisions are invalid for the reason that they concern procedural matter contrary to procedure previously adopted by this Court. The procedural rules and the cases decided by the courts take precedence over any statute enacted concerning a procedural matter. IC 34-5-2-1. The law in Indiana is established "that courts do not take judicial notice of ordinances of incorporated towns and where suit is predicated on such an ordinance, so much of the same as relates to the action must be made part of the complaint." *Indianapolis Traction and Terminal Co.* v. *Hensley,* (1917) 186 Ind. 479, 115 N.E. 934; see also *McClurg* v. *Carte, Inc.,* (1970) 255 Ind. 110, 262 N.E.2d 854, 23 Ind. Dec. 179. We also note

that IC 33-11.6-4-11 provides that the Marion County Superior Court take judicial notice of such ordinances. This section of that statute is likewise invalid for the above reason. The reason the courts do not take judicial notice of ordinances is that many cities and towns lack an organized codification of municipal ordinances. It is, therefore, virtually impossible for a trial judge to handle his case load if he must stop to search for obscure ordinances.

Question 2. Is the provision in the county court statute which requires six-member juries in both civil and criminal cases in county courts (IC 33-10.5-7-6) a constitutional provision?

We hold that such a provision is constitutional. Our decision in this regard today represents a change of law in Indiana, inasmuch as there is a prior case indicating that six-member juries are unconstitutional. *Miller's Natl. Ins. Co.* v. *American State Bank of East Chicago,* (1934) 206 Ind. 511, 190 N.E. 433. The Supreme Court held that the legislature could not authorize six-member juries because of Article 1, § 20 of the State Constitution, which provides that "in all civil cases the right of trial by jury shall remain inviolate," citing *Allen* v. *Anderson,* (1877) 57 Ind. 388, for the proposition that "inviolate" means "continue as it was." The Court concluded that the Constitution was intended to codify the existing common law requirement that the Court found to be a twelve-member jury. In an earlier case, *Allen* v. *State,* (1876) 54 Ind. 461, the Supreme Court held that a defendant in a criminal case may not waive the right of a jury composed of twelve jurors.

However, the Supreme Court of the United States, in *Williams* v. *Florida,* (1970) 399 U.S. 78, 26 L.Ed.2d 446, 90 S. Ct. 1893, held that the use of six-member juries does not violate the Fourteenth Amendment to the United States Constitution. In view of the ruling by the Supreme Court of the United States and in view of the obvious legislative intent

in this statute, we hold that the provision for a six-member jury in the county courts is a constitutional provision.

Question 3. What are the appropriate costs for small claims and misdemeanor cases in circuit and superior courts acting under the authority of Public Laws No. 305 and 309?

The costs provided by Public Law No. 305 [IC 33-10.5-8-5(a)] are as follows:

"(1)    a county docket fee in the amount of Ten Dollars ($10.00), to include service of process by registered mail;

"(2)    the costs of publication of notices, if any, or sheriff's costs for the service of any writ, process or other papers issued by the court, or the proper officer thereof, as is required by law to be taxed and charged for like services in the circuit courts; and

"(3)    witness fees, if any, in an amount as provided for by law in circuit courts.

"The county docket fee provided herein shall be in lieu of any docket fee or clerk's service fee required by law to be taxed by circuit courts in civil actions and shall be paid upon the institutions [sic] of each civil case."

The above provision concerning costs refers only to the county courts. There are no other provisions in the new statute concerning costs for small claims and misdemeanors in the circuit and superior courts. The docket fee prescribed in the statute for county courts is different from the docket fee generally assessed in circuit and superior courts and is different from the docket fee prescribed in the new Vanderburgh county statute for the disposition of small claims in the Vanderburgh Superior Court [IC 33-5-43.1-10(b)].

Article 4, § 23 of the Indiana Constitution reads as follows: "In all the cases enumerated in the preceding Section, and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the State." An examination of these statutes in their entirety leads us to the conclusion that it was the intent of the legislature to abide

by the above-quoted section of the Constitution and to provide for the uniform handling of small claims litigation throughout the State. We, therefore, conclude that it was the legislative intent to provide that the costs specified in the county court statute apply to all courts of record performing the "county court functions." To the extent that Public Law No. 309 purports to establish a separate and different costs provision, the same is invalid as a violation of Article 4, § 23, above quoted. We, therefore, hold that the costs provided for in Public Law No. 305 be applied in all courts exercising small claim and misdemeanor jurisdiction under Public Law No. 305. The same is also applied to the Vanderburgh County small claims section provided by Public Law No. 309. We further observe that it is the apparent legislative intent that the costs applicable to small claims are in lieu of any other court costs, including the judicial fee required by IC 33-13-12-8.5. The judicial fee is specifically included in the costs provision for misdemeanors [IC 33-10.5-8-5(b)(7)], but is omitted from the provision concerning small claims. We, therefore, hold it is the obvious legislative intent to omit the judicial fee from the costs related to small claims.

Question 4. Is Section 56 of the county court statute sufficient to effect the transfer of all proceedings and matters from the justice of the peace courts to circuit and superior courts specified in the statute?

The only provision in the county court statute that directs the transfer of cases from the justice of the peace courts is Section 56, which reads as follows:

> "All causes, cases, actions, proceedings, prosecutions, orders, records, judgments, rulings, recognizances, undertakings, bonds and process of justice of the peace courts pending on December 31, 1975, are transferred to the county court effective January 1, 1976, and shall have the same force and effect as though originally filed in, made by or issued by the county court created by this act. All causes, cases, actions, proceedings, prosecutions, orders, records, judgments, rulings, recognizances, undertakings, bonds and

processes of any county court abolished by this article are hereby transferred to the county court on the date the respective court is abolished by his [sic] act."

The above provision refers only to the county courts. There is no specific reference in the statute for the transfer of cases to the various circuit or superior courts affected. In view of the clear legislative intent demonstrated by a reading of the statute in its entirety, this Court must presume that the failure to make reference to the various circuit and superior courts with regard to the transfer of cases was a matter of legislative oversight. It was clearly the intent of the legislature to effect the transfer of all proceedings and matters from the justice of the peace courts to the appropriate county, superior and circuit courts specified in the statute.

We would point out, however, there are two noted exceptions as to the date transfers are to be effective. The first exception is found in Section 57, immediately following the above-quoted language, which section reads as follows:

"Notwithstanding the provisions of IC 1971, 33-11-21-2, as added by Acts 1971, P.L. 441, SECTION 1, the office of justice of the peace in counties having a population of more than five hundred thousand (500,000), but less than seven hundred thousand (700,000), is extended until June 30, 1976."

It is obvious from the language of the above-quoted Section 57, that the legislature fully intended to postpone the transfer of cases from the offices of justices of the peace in counties coming within the stated population range. Although the language of the section only refers to the extension of the office of justice of the peace, we cannot presume the legislature intended to remove all cases from those offices, leaving those judges with no case load to handle.

A similar situation exists by reason of the passage of the separate Senate Enrolled Act No. 136, which became Public Law No. 311, IC 33-5-45.5-1 *et seq.* This act establishes a superior court in Warrick County and provides for the

transfer of small claims jurisdiction to that court. However, the same act extends the office of justice of the peace in Warrick County to December 31, 1976. Here again, the language of the statute might well be read to mean that the cases pending in those courts would be transferred immediately to the Warrick Superior Court. However, we must presume the legislature did not intend such a result. We, therefore, hold that so long as the justice of the peace court continues to exist in Warrick County, it will continue to handle its case load, and that that case load will be transferred to the Warrick Superior Court on December 31, 1976.

IT IS, THEREFORE, ORDERED that the transfers specified in the above-quoted section of the statute be made to the appropriate county, superior and circuit courts designated in the statute to assume the case load of small claims and misdemeanors. Provided, however, such transfers in counties having a population of more than 500,000, but less than 700,000, shall be effective June 30, 1976, and transfers of such cases in Warrick County shall become effective December 31, 1976.

Question 5. How much of the county court statute (IC 33-10.5) applies to circuit courts designated to assume the justice of the peace jurisdiction as set forth in the statute?

In the county court statute, the legislature amended the Indiana Code provisions relating to circuit courts by adding sections concerning each judicial circuit not receiving a county court. In these sections it was provided that each circuit court is to create a "small claims docket" and that "the judge shall adopt the simplified procedure applicable to small claims in county courts pursuant to IC 1971, 33-10.5-7-2, which shall secure the just, speedy and inexpensive determination of every small claim." IC 33-4-1-4.1 *et seq.* Each of these sections refers to IC 33-10.5-7-2, which provides as follows:

"Sec. 2. Practice and Procedure. Except as otherwise provided in this article, the practice and procedure in the

county court shall be as provided by statute and Indiana rules of procedure as adopted by the supreme court of Indiana. However, in cases of the small claims docket there shall be the following exceptions:

"(a)    Defendants shall be deemed to have complied with the statute and rule requiring the filing of an answer upon entering their appearance personally or by attorney. The appearance shall be deemed a general denial and shall preserve all defenses and compulsory counterclaims which may then be presented at the trial of the cause.

"(b)    If at the trial of the cause, the court determines that the complaint is so vague and ambiguous that the defendant was unable to determine the nature of plaintiffs' claim, or that the plaintiff is surprised by defense or compulsory counterclaim raised by the defendant that the plaintiff could not reasonably have anticipated, the court shall grant a continuance.

"(c)    The trial shall be informal, with the sole objective of dispensing speedy justice between the parties according to the rules of substantive law, and shall not be bound by the statutory provisions or rules of practice, procedure, pleadings or evidence except provisions relating to privileged communications and offers of compromise."

IC 33-10.5-7-2 is the only provision which the circuit courts are specifically required to adopt. We, therefore, assume it was the legislative intent that this is the only section applicable to the circuit courts. However, we would observe that it is within the prerogative of the judges of those circuit courts to adopt by rule other provisions of the statute which they might consider to be appropriate in the handling of their business. We would further observe that the circuit courts would also be bound by any applicable rules of this Court in existence now, or to be made in the future, that would apply to the exercise of their small claims jurisdiction. The circuit, superior and county courts assuming jurisdiction under this statute are empowered to make local court rules to facilitate the handling of these cases by Trial Rule 81 of the Indiana Rules of Procedure.

Question 6.    Does a plaintiff in a civil suit in which the claim is less than Three Thousand Dollars ($3000) have the

option to file the suit either as a small claim or as any other civil suit in the circuit court?

With reference to each affected circuit court, the statute provides:

"The following actions may be filed in the small claims docket:

"1) all civil cases in which the amount sought is less than three thousand dollars ($3,000). The plaintiff, in a statement of the claim, or the defendant, in a counterclaim, may waive the excess of his claim over three thousand dollars ($3,000) in order to bring it within the jurisdiction of the small claims docket. . . ."

In view of the fact the legislature used the permissive term "may" as opposed to the mandatory term "shall", we hold the legislative intent to be that the plaintiff is to have an option as to where to file the claim. We, therefore, hold that a plaintiff does have the option to file a civil suit in which the claim is less than Three Thousand Dollars ($3,000), either as a small claim or as any other civil suit in the circuit court.

Question 7. May a circuit court exercising small claims jurisdiction appoint a referee to assist the court in performing the "county court functions"?

This Court recognizes that circuit courts required to assume the case loads of justice of the peace courts may easily become overburdened. By the adoption of Trial Rule 53, the Indiana legislature and this Court have recognized the need for trial courts to have authority to cope with unusual case load situations. This Court is, therefore, proposing an amendment to Trial Rule 53 to become effective January 1, 1976, which will authorize each circuit court exercising small claims jurisdiction to appoint a referee who shall serve at the pleasure of the circuit judge. Such referee shall have such authority as the circuit court judge shall assign by order.

This Court deems such action to be necessary to prevent the possible inundation of the regular circuit docket by a deluge of small claims and misdemeanor cases.

Question 8. How should referees appointed by circuit judges to hear small claims and misdemeanor cases be compensated?

The county court statute provides that county court judges are to be paid $23,500 per year. Of that salary, $18,000 is to be paid by the State and $5,500 is to be paid by the county (IC 33-10.5-5-2). Mathematically, the State's share is 18000/23500 or .766. The county's share is 5500/23500 or .234. In each case, where a circuit judge finds it necessary to appoint a referee, such referee will be paid reasonable compensation, including mileage allowance to be determined by the appointing circuit court judge. The amount so authorized to be paid to such a referee shall be distributed between the State and the county in the same proportion as that provided for the county court judges as above set out. It has long been the law that courts have the inherent power to provide for the necessary operation and functions of their court. *McAfee* v. *State ex rel. Stodola,* (1972) 258 Ind. 677, 284 N.E.2d 778, 31 Ind. Dec. 606. The legislature has demonstrated its intent to set a public policy of State and county participation in the salary of the county court judges. We hold that same intent should carry over to the referee required by a circuit judge exercising small claim and misdemeanor jurisdiction under this statute.

Question 9. Are circuit courts exercising small claims jurisdiction under this statute required to make quarterly reports similar to those required for county courts [IC 33-10.5-3-6(a)] and the superior courts [IC 33-10.5-3-6(b)]?

All circuit courts will be making a general report of their court business as required by the Judicial Administration

Act [IC 33-2.1-7-3 (b)]. Those circuit courts exercising small claim and misdemeanor jurisdiction should also include in their reports appropriate information concerning their "county court functions."

Question 10. How much of the county court statute (IC 33-10.5) applies to superior courts required by the statute to exercise small claims jurisdiction?

The county court statute provides:

"In a county having a population of more than one hundred fifty thousand (150,000) but less than five hundred thousand (500,000) according to the most recent federal census and having a unified superior court, there is created a small claims and misdemeanor division of the unified superior court." IC 33-10.5-2-1 (b).

Since the quote above set out is to be found within that portion of the Act which creates county courts or courts to perform the "county court function," it may be argued that the legislature intended for the superior courts to be governed by the same provisions as the county courts. However, it may also be argued that the legislature intended to apply only certain specific sections to the superior courts because the statute makes a number of specific references to superior courts, clearly recognizing the differences between the superior courts and the county courts. It would appear to this Court to be more logical to accept the latter view. The legislative intent appears to be to recognize a basic difference between the functions of a superior court in particular counties as opposed to the function of a county court as specifically provided in other counties. We, therefore, hold that the superior courts exercising small claims jurisdiction under this statute are bound by the sections making specific reference to them. The superior courts mentioned are also to follow the section regarding costs (IC 33-10.5-8-5). [See Question 3, *supra*] The individual superior courts involved may also choose to adopt, pursuant to TR. 81, local rules to facilitate the "just, speedy and inexpensive de-

termination" of small claims in misdemeanor cases. Provisions which are not mandatory as to superior courts exercising small claim jurisdiction are IC 33-10.5-7-6 (use of six-member juries), IC 33-10.5-7-3 (change of venue), IC 33-10.5-2-4 (traffic violations bureau), and IC 33-10.5-8-1(c) (mandatory evening sessions). However, any or all of these sections may be adopted by a particular superior court by local rule.

Question 11. With reference to the superior courts involved in this statute, is a "small claim" defined as a claim that does not exceed $1500, or as a claim that is less than $3000? Similarly, in regard to possessory actions, is a "small claim" defined as a possessory action between landlord and tenant where the rent received does not exceed $500 per month, or a possessory action between landlord and tenant, irrespective of the value of the property involved?

Here again, we must examine the statute in its entirety with the view of ascertaining the legislative intent to establish a more efficient and more uniform judicial system throughout the State. As pointed out above, the legislature has recognized the fundamental difference between circuit courts and superior courts exercising "small claims" jurisdiction and a "county court" exercising only small claim and misdemeanor jurisdiction. There is no question but what circuit courts and superior courts are quite similar in the jurisdiction which they are required to exercise and the manner of procedure followed in discharging their constitutional and statutory duties. Each of the sections establishing a small claims division within the circuit courts affected by this statute defines "small claim" as a claim that is "less than three thousand dollars ($3000), or all possessory actions between landlord and tenant, irrespective of the value of the property involved." The provision of the statute establishing a small claims division in the superior courts [IC 33-10.5-2-1(b)] does not define "small claim" unless it is read to incorporate the definition specified for county courts.

However, when we turn to Public Law No. 309, we see that the legislature defined the Vanderburgh County jurisdiction for superior courts in the small claims division as $3000 or less, and all possessory actions between landlord and tenant in which the damage claimed does not exceed three thousand dollars ($3000). [IC 33-5-43.1-3(b)(1) and (2)] We, therefore, hold that the legislative intent was to give the superior courts assuming small claim jurisdiction, jurisdiction over claims that are less than $3000, or a possessory action between the landlord and tenant, irrespective of the value of the property involved.

Question 12. Does a plaintiff in a civil suit in which the claim is less than $3000, or a possessory action between landlord and tenant, irrespective of the value of the property involved, have the option to file the suit either as a small claim or as any other civil suit in superior court?

Following the same principles set forth with reference to Question 11, the provisions of IC 33-4-1-4.1 should apply to superior courts. A portion of the statute provides:

"(b) The following actions may be filed in the small claims docket:

"(1) all civil cases in which the amount sought is less than three thousand dollars ($3000). The plaintiff, in a statement of the claim, or the defendant, in a counterclaim, may waive the excess of his claim over three thousand dollars ($3000) in order to bring it within the jurisdiction of the small claims docket; and

"(2) all possessory actions between landlord and tenant, irrespective of the value of the property involved." IC 33-4-1-4.1(b).

Here we see again the use of the permissive term "may" as opposed to the mandatory term "shall." The use of this terminology suggests the legislative intent for the plaintiff to have an option as to where to file his claim. We, therefore, hold that a plaintiff does have the option to file a civil suit in which the claim is less than $3000 or a possessory action between landlord and tenant,

irrespective of the value of the property involved, as a small claim or as any other civil suit in superior or circuit court.

Question 13. Does IC 33-10.5-2-1(b) create county courts or merely additional divisions within superior courts?

IC 33-10.5-2-1 provides:

"(a) . . . However, a county court may not be established in a county where the general assembly provides by law before January 1, 1976 for a small claims and misdemeanor division of a circuit or superior court.

"(b) In a county having a population of more than one hundred fifty thousand (150,000) but less than five hundred thousand (500,000) according to the most recent federal census and having a unified superior court, there is created a small claims and misdemeanor division of the unified superior court."

There are three counties which presently have a population between one hundred fifty thousand (150,000) and five hundred thousand (500,000), according to the last federal census, and also have a unified superior court system. These are Allen, St. Joseph and Vanderburgh counties. Vanderburgh County, however, has a separate statute which provides for its "county court functions," which as we have previously stated, must also be considered in this opinion. It thus becomes apparent that the legislature did not intend to create a "county court" in those counties, but did in fact intend to create a small claims division within existing superior courts. We, therefore, hold that IC 33-10.5-2-1(b) creates a small claims division within superior courts.

Question 14. Did the legislature intend to create new judgeships for the superior courts discussed above?

IC 33-10.5-2-2 provides:

". . . There shall be the following number of judges of the county court and judges who shall serve as members of a unified superior court:

\* \* \*

"two (2) serving Allen County;
"two (2) serving St. Joseph County; . . . ."

IC 33-5-43 and 43.5 create three new judgeships for the Vanderburgh Superior Court.

The question presented is whether the language used intends to provide that there shall be two additional judges for both the Allen and St. Joseph superior courts, or that the courts will continue to have the same number of judges but that two of the present judges will be assigned to serve as small claims and misdemeanor judges. In view of the case load presently being handled by the judges of those superior courts, and in view of the additional case load which is being transferred from former justice of the peace courts, it can hardly be presumed that the legislature would expect that additional work load to be absorbed by the now existing judges in those courts. We, therefore, hold that Senate Enrolled Act No. 441 created two new judgeships in Allen County Superior Court and two new judgeships in St. Joseph County Superior Court. We further hold that the legislature created three new judgeships in Vanderburgh County Superior Court by the enactment of Senate Enrolled Act No. 351.

Question 15. How are the new superior court judges for the Allen, St. Joseph and Vanderburgh superior courts to be selected?

IC 33-10.5-4-3 provides:

"Selection of Superior Court Judges. In any county with a population of not less than one hundred fifty thousand (150,000) nor more than five hundred thousand (500,000) having a unified superior court, the judge provided for that county by section 2 of chapter 2 of this article shall serve as a member of the superior court and shall be elected or appointed, and retained or removed in the manner provided by law for the election, appointment, retention or removal of other judges of that superior court. The judge shall have the same tenure as other judges of that superior court."

We, therefore, hold that the new superior court judges for the Allen and St. Joseph superior courts are to be selected in

the same manner as are the other superior court judges in those unified superior court systems. The Vanderburgh superior court statute presents a different situation which is covered under Question 21, *infra*.

Question 16.   What will be the amount of the salaries paid to the judges of the new judgeships created in the Allen, St. Joseph and Vanderburgh unified superior court systems?

As above discussed, the legislature clearly created these new judgeships as additions to the "unified systems." Here again, in the interest of uniformity, it would appear the legislative intent is that the judges filling the newly created positions are to be paid the same salary as other judges serving in those superior courts and are to be chosen and serve their terms in accordance with the superior court statutes. We, therefore, hold the salaries for the new judges created for the superior courts in Allen, St. Joseph and Vanderburgh counties are to be paid the same as the other judges of those superior courts.

Question 17.   With reference to the superior courts, did the legislature intend that each division of such courts would be required to handle both "small claims" and misdemeanors?

Although the statute expressly provides for a small claims and misdemeanor division within the superior court, there is nothing which prohibits the division from having two or more sections. By the manner in which it has created the unified superior court, the legislature has clearly demonstrated an awareness of the need of flexibility in such a system. Such a system would doubtlessly function at a maximum efficiency in a situation where the internal division of the work load is left to the administration of that particular court. The reasonable interpretation, therefore, of Senate Enrolled Act No. 441 is that it be consistent with the statutes establishing the superior courts in Allen, St. Joseph and Vanderburgh counties, insofar as the

general conduct of the courts' business is concerned. We, therefore, hold that the small claims and misdemeanor functions may be assigned within the superior courts as the particular superior court may determine from time to time.

Question 18. Are superior courts, as defined above, required to file reports similar to those required by county courts?

IC 33-10.5-3-6(b) states:

"A judge of a superior court in a county having a population of not less than one hundred fifty thousand (150,000) nor more than five hundred thousand (500,000) who sat in the small claims and misdemeanor division during the period covered by the reports, shall certify and file the reports prepared by the clerk in the same manner and form as is required of the county court judges. The judges of the unified superior court shall file their reports with the chief judge of the superior court."

The above portion of the statute could be read to mean that the judges of the unified superior courts would file their reports only with the chief judge of the superior court. However, in view of the obvious legislative intent to promote uniformity and efficiency within the State court system, it would appear the last sentence of the above-quoted portion of the statute has inadvertently omitted the word "also" and that the sentence should be interpreted to mean "the judges of the unified superior court shall *also* file their reports with the chief judge of the superior court." We, therefore, hold that the superior courts above discussed are required to file reports similar to those required for county courts, and that copies of such reports shall be filed in the same manner and form as required of the county court judges and that such report shall also be filed with the chief judge of such superior courts.

Question 19. How are any conflicts between Public Law No. 305 (Senate Enrolled Act No. 441) and Public Law No. 309 (Senate Enrolled Act. No. 351) to be resolved?

Public Law No. 309 was approved at 2:57 P.M. on May 5, 1975. Public Law No. 305 was approved at 4:45 P.M. on the same day. To the extent the two statutes contain conflicting provisions, we must presume an implied repealer of the conflicting sections in the first approved act by the sections contained in the last approved act. *Newbauer* v. *State,* (1928) 200 Ind. 118, 122, 161 N.E. 826.

Therefore, any conflict between Public Laws No. 305 and No. 309 must be resolved by the provisions in Public Law No. 305.

Question 20. Is Section 6 of Public Law No. 309 a valid provision?

Section 6 provides as follows:

"IC 1971, is amended by adding a new chapter to be numbered 43.2 and to read as follows:

"Chapter 43.2. Election of Three of the Judges of the Vanderburgh Supreme [sic] Court.

"Sec. 1. Non-Partisan Elections. With respect to the three (3) judgeships created in Vanderburgh County under the 1975 amendment to IC 1971, 33-5-43.5-1, vacancies occurring on the expiration of the initial appointive terms and subsequent vacancies in such judgeships caused by expiration of terms shall be filled by judges elected in non-partisan elections, beginning with the general election of 1976 and every six (6) years thereafter.

"At least fifty (50) days and not more than eighty (80) calendar days prior to a general election any person desiring to become a candidate for any one of the three (3) judgeships affected by this chapter in the superior court shall file with the clerk of the Vanderburgh circuit court a nominating petition, signed by the candidate and by fifty (50) registered voters of the county. To be eligible for election, a candidate must be domiciled in the county of Vanderburgh, a citizen of the United States, and admitted to the practice of law in the courts of this state.

"All such nominations shall be listed on one (1) separate ballot at the general election, without party designation. Such ballot shall state the number of judges to be elected. Candidates having the greatest number of votes shall be elected.

"All the provisions of IC 1971, 3-1-23 through IC 1971, 3-1-30 pertaining to the conduct of elections, counting voters and canvassing returns, certificates of elections, recounts and contents [sic] of election, and corrupt practices, which are not inconsistent with the provisions of this chapter, shall be applicable to such elections.

"Sec. 2. Vacancies Other Than by Expiration of Term. When a vacancy occurs in any of the three (3) judgeships affected by this chapter in the superior court for reasons other than the expiration of a judicial term, such vacancy shall be filled by appointment pursuant to IC 1971, 33-5-43.5-10 through and including IC 1971, 33-5-43.5-15. At the next general election following such vacancy, a successor shall be selected in a non-partisan election as provided in section 1 of this chapter to serve until the expiration of the term of the predecessor elected judge, and the appointee shall serve only until January 1 of the year following such general election, and until his successor is elected and qualified."

Public Law No. 305, Section 48, provides in part as follows:

"Selection of Superior Court Judges. In any county with a population of not less than one hundred fifty thousand (150,000) nor more than five hundred thousand (500,000) having a unified superior court, the judge provided for that county by section 2 of chapter 2 of this article shall serve as a member of the superior court and shall be elected or appointed, and retained or removed in the manner provided by law for the election, appointment, retention or removal of other judges of that superior court. The judge shall have the same tenure as other judges of the superior court." IC 33-10.5-4-3

Judges of the Vanderburgh Superior Court are presently selected in accordance with IC 33-5-43.5-14, which reads as follows:

"Selection of Judges. A vacancy occurring on the Vanderburgh Superior Court shall be filled by appointment of the governor from a list of three [3] nominees presented to him by the judicial nominating commission. If the governor shall fail to make an appointment from the list within sixty [60] days from the day it is presented to him, the appointment shall be made by the chief justice or the acting chief justice of the state of Indiana from the same list, or altered list as provided for in section 13 [33-5-43.5-13] of this chapter."

It is noted that section 2 of chapter 2 of Public Law No. 305 does not list Vanderburgh County as one receiving new judges. One must look to Public Law No. 309 for the creation of the three new judgeships in Vanderburgh County. Thus, the section of Public Law No. 305 above-quoted, referring to selection of superior court judges, does not apply to Vanderburgh County.

We, therefore, hold that the method of selection provided in section 6 of Public Law No. 309 is a decision of the legislature which is within their power to make. See *State ex rel. Devening* v. *Bartholomew,* (1911) 176 Ind. 182, 196, 95 N.E. 417.

In so holding, we are fully cognizant of the confusion created by having four members of the Vanderburgh Superior Court chosen by one method and three members of the same court chosen by an entirely different method. However, this is a matter for legislative consideration and not within the power of this Court to correct.

Question 21. Are the provisions of Public Law No. 309 (Senate Enrolled Act No. 351) severable?

This act contains no severability provision. However, this Court has previously held that the absence of a severability clause does not mean that an entire act must fail because of unconstitutional provisions. *In re City of Mishawaka,* (1972) 259 Ind. 530, 289 N.E.2d 510, 33 Ind. Dec. 671. We, therefore, hold that Public Law No. 309 is in fact severable, and those portions of that act creating three new judgeships in the Vanderburgh Superior Court to facilitate the handling of small claims and misdemeanors are in fact valid.

Question 22. May the interim judges appointed under Section 53 of Public Law No. 305 continue to practice law?

Following Canon 7 of the Code of Judicial Conduct, is a section entitled "Compliance with the Code of Judicial Conduct." A part of that section reads as follows:

". . . All judges should comply with this Code except as provided below.

\* \* \*

"B.  Judge Pro Tempore

"A judge *pro tempore* is a person who is appointed to act temporarily as a judge.

"(1)  While acting as such, a judge *pro tempore* is not required to comply with Canon 5C(2), (3), D, E, F and G and Canon 6C.

"(2)  A person who has been a judge *pro tempore* should not act as a lawyer in a proceeding in which he has served as a judge or in any other proceeding related thereto. . . ."

In view of the short term of the interim appointments provided in Section 53 and the stated legislative intent that such judges are exempt from the provision of Section 48, chapter 6, Sec. 6, which prohibits the county judges from practicing law, we hold that the interim judges are in the nature of *pro tempore* judges and may continue to practice law as provided in the canon above-quoted.

In writing this opinion we are fully aware of many possible questions concerning the operation of these statutes which we are not attempting to answer at this time. We have confined this opinion to those questions which we deem vital to the orderly implementation of these statutes.

The Clerk is hereby ordered to certify immediately a copy of this opinion to each circuit court and to the superior courts of Allen, St. Joseph and Vanderburgh counties.

Arterburn, DeBruler, Hunter and Prentice, JJ., concur.

NOTE.—Reported at 334 N.E.2d 659.