NEAL RUETZ *v.* STATE OF INDIANA.

[No. 175S22. Filed March 9, 1978. Rehearing denied May 12, 1978.]

Howard E. Petersen, of LaGrange, for appellant.

Theodore L. Sendak, Attorney General, Arthur Thaddeus Perry, Assistant Attorney General, for appellee.

PIVARNIK, J.—Appellant Ruetz was convicted of first-degree murder by a jury in the LaGrange Circuit Court on May 26, 1971. He was sentenced to life imprisonment. He brings this direct appeal, the consideration of which has been impeded by numerous difficulties, including the accidental loss of most of the record of the trial. Cf. Ruetz v. LaGrange Circuit Court, (1972) 258 Ind. 354, 281 N.E.2d 106; Ruetz v. Lash, (7th Cir. 1974) 500 F.2d 1225. The crime in question is the murder of Thomas Schultz, the owner of a South Bend laundry, in July of 1971.

Six alleged errors are presented for our review. They concern: (1) the loss of most of the trial court record; (2) the similar loss of the grand jury minutes relating to this case;

(3) the pre-trial photographic identification procedures; (4) the admission of evidence at trial which had been seized from appellant in Colorado; (5) certain final instructions, and; (6) the sufficiency of the evidence to support this conviction.

## I.

Appellant first make two arguments relating to the loss of most of the trial court record. He argues, alternatively, that he is entitled to a new trial as a matter of either the common law or of due process.

The testimony given at appellant's trial was recorded on a number of recording discs which could not be located when this appeal was taken in 1974, but which may have been accidentally or inadvertently destroyed. Ninety pages of testimony were transcribed in 1971; transcription of the remainder was rendered impossible because of the loss of the discs. A statement of the evidence was prepared by appellant's counsel and submitted to and approved by the trial court, all pursuant to Ind. R. Ap. P. 7.2(A) (3) (c), which reads:

> *"Statement of the Evidence or Proceedings when no Report was made or when the Transcript is Unavailable.* If no report of all or part of the evidence or proceedings at the hearing or trial was or is being made, or if a transcript is unavailable, a party may prepare a statement of the evidence or proceedings from the best available means, including his recollection. If submitted contemporaneously with the matter complained of, the statement may be settled and approved by the trial court. If submitted thereafter, the statement shall be served on other parties who may serve objections or prepare amendments thereto within ten (10) days after service. The statement and any objections or prepared amendments shall be submitted to the trial court for settlement and approval and as settled and approved shall become a part of the record and be included by the clerk of the trial court in the record.
>
> "If statements or conduct of the trial judge are in controversy, the statement shall be supported by sworn affidavit which shall be submitted to the trial judge for his certification. If he refuses to certify the statement he shall file opposing affidavits. All such affidavits shall be included in the record by the clerk of the trial court."

Appellant first argues that the loss of the greater part of the trial evidence should entitle him to a new trial as a matter of common law. He asserts that an English statute of the reign of Edward I provides for a new trial where no record adequate for appeal was preserved, and that this statute was incorporated into Indiana law by Ind. Code § 1-1-2-1 (Burns 1972), as part of the English common and statutory extant in 1607. Indiana practice prior to the adoption of Rule 7.2 also provided for a new trial where a transcript of the evidence was unavailable. *Dunbar* v. *State,* (1974) 160 Ind. App. 191, 311 N.E.2d 447. However, this practice was abrogated by our adoption of Rule 7.2, as would be any statute to the contrary. *Matter of Public Law No. 302 and Public Law No. 309,* (1975) 263 Ind. 506, 334 N.E.2d 659. Therefore, appellant's argument fails regardless of the provisions of the old English law.

Appellant next urges that Rule 7.2(A)(3)(c) is unconstitutional in that it denies appellant due process. Appellant cites no authority for this proposition. The federal courts seem to have considered the question of the adequacy of substitute records only in the context of the constitutional validity of requiring an indigent appealing a criminal conviction to accept a substitute for a verbatim transcript, when the transcript is available and could be obtained by an appellant able to pay for its preparation. *See, e.g., Mayer* v. *City of Chicago,* (1971) 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372; *Draper* v. *Washington,* (1963) 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899. These cases rest upon the prohibition of the Equal Protection Clause against invidious distinctions in the quality of appellate review rendered to indigents and nonindigents, respectively, in criminal appeals. *Mayer, supra,* at 404 U.S. 193-94, 92 S.Ct. 414, 30 L.Ed.2d at 377-78. They, therefore, have no application to cases such as this, where due to unavailability of the records, the appellant cannot obtain a verbatim trial transcript regardless of wealth or poverty. *United States ex rel. Smart* v. *Pate,* (7th Cir. 1963) 318 F.2d 559; *United*

*States ex rel. Hunter* v. *Follette,* (S.D.N.Y. 1969) 307 F.Supp. 1023.

Relatively few courts appear to have considered whether requiring a criminal defendant to employ a substitute for an unavailable transcript denies due process. The Kansas Supreme Court has concluded that requiring a defendant to attempt reconstruction of a lost portion of a trial record did not deny the defendant "meaningful appellate review." *State* v. *Jefferson,* (1969) 204 Kan. 50, 460 P.2d 610. The Florida Court of Appeals and the Illinois Court of Appeals have both held that substitution of certified or agreed statements of evidence do not deny criminal defendants due process. *Griffin* v. *State,* (Fla. App. 1975) 314 So. 2d 243; *People* v. *Hanson,* (1977) 44 Ill. App.3d 977, 359 N.E.2d 188.

We are unable to find any denial of due process in requiring appellant to submit a statement of the evidence pursuant to Rule 7.2 under the facts of this case.

## II.

Appellant next argues that he was denied access to the grand jury minutes. The grand jury minutes apparently met the same fate as the record of the testimony in the trial, and were not available for the state to produce in 1974. Since the grand jury minutes did not exist, they were not "within the control of the prosecution" and therefore, our decision in *Antrobus* v. *State,* (1970) 253 Ind. 420, 254 N.E.2d 873, does not apply. Ind. Code § 35-1-15-17 (Burns 1975), provides an alternative method of gaining access to a witness' grand jury testimony. That statute provides that a court can call a member of the grand jury to to testify at the trial should impeachment of one of the witnesses be necessary or desirable. Appellant did not avail himself of the method provided by this statute, in that he failed to request the testimony of any of the grand jurors. We therefore find no reversible error in this question.

## III.

Appellant next asserts that suggestive photographic identification procedures furnished to identifying witnesses, Mrs. VanLue and Robert Schultz, so tainted their in-court testimony as to make it unreliable and therefore inadmissible. The evidence is that the police officer showed each of these witnesses six photographs, two of which were of the appellant. One of these pictures of appellant was in color. The appellant was identified from the colored photograph as being the person these witnesses saw in the vicinity of the homicide at the time they testified to. Each of the witnesses identified the appellant in open court from the witness stand. Mrs. VanLue had talked to him in a restaurant, in the daylight, and had recalled that he ordered buckwheat pancakes. Robert Schultz said that he spoke with him, and also described the clothing he was wearing at the time. Thus, it appears that the witnesses recalled sufficient detail about the man they identified as defendant to render the photographic identification under the circumstances permissible or at least harmless. *Love* v. *State,* (1977) 266 Ind. 577, 365 N.E.2d 771, 773. Furthermore, the pretrial photographic displays were not so impermissibly suggestive as to raise a substantial likelihood of irreparable mis-identification. *Gaddis* v. *State,* (1977) 267 Ind. 100, 368 N.E.2d 244, 249. There is thus no error here.

## IV.

The next issue for our consideration involves admission of a .38 caliber handgun, .38 caliber ammunition, and a leather case into evidence at the trial. These items were seized as the result of a search warrant issued in Colorado, which the appellant asserts was defective. On information given him by Sergeant William Floring of the South Bend police department, who was the officer in charge of the investigation, Detective Sergeant Richard Rankin of the Denver police force filed an affidavit with the

county court of Denver, Colorado requesting a search warrant for the items above described. Appellant claims the search warrant was defective in that it was based on hearsay information given to affiant Rankin. Hearsay facts are competent to support a finding of probable cause where the facts furnished to the affiant are credible, and the affiant has reasonable grounds for attaching reliability to the informant giving him the facts. *Bowles* v. *State,* (1971) 256 Ind. 27, 267 N.E.2d 56. The Denver court found that South Bend officer Floring was a source that affiant Rankin had a right to consider credible and reliable. There was thus no error in the trial court's admission of this evidence.

## V.

Appellant next challenges certain final instructions given by the trial court. Appellant claims error in regard to the giving of state's instructions Nos. 1 and 8, and the denial of defendant's tendered instructions Nos. 5, 7, and 9. State's instruction No. 1 was a standard instruction regarding direct and circumstantial evidence, and state's instruction No. 8 instructed on premeditation and malice aforethought in a first-degree murder charge. Both are concise statements of the law that comport with numerous decisions by this court. Defendant's tendered instructions 5, 7, and 9 are merely repetitious of several instructions given by the court. The trial court gave the jury twenty-four preliminary instructions and thirty-four final instructions, which covered all areas of the law including the elements of first-degree murder and the weight to be given to circumstantial evidence. The court further instructed the jury that they were to consider all of the instructions together as a whole and in relation to each other. We find no merit in appellant's assignment of error with regard to instructions given by the court.

## VI.

Appellant next raises the question of the sufficiency of the evidence to support his conviction. The evidence in this case is

circumstantial. However, we apply the same standard of review to this case as we do to all cases. We consider only that evidence most favorable to the state and all reasonable inferences to be drawn therefrom. In doing so we neither weigh the evidence nor determine the credibility of witnesses. If there is then substantial evidence of probative value to support every material element of the crime beyond a reasonable doubt, the verdict will not be disturbed. This rule of deference to the trial court on questions of fact has been stated innumerable times, and was explained in the early case of *Deal* v. *State*, (1895) 140 Ind. 354 at 361, 39 N.E. 930 at 932:

> "The court of last resort is supposed, by their learning and experience in the law, time and opportunities of library and books, to be better prepared than the trial court to ascertain what the law is. But, on mere questions of fact, they are not supposed to be any better qualified than the jury and the trial court to ascertain what the facts are, if even the evidence were brought before them the same as before the trial court."

Though we cannot weigh the evidence, it is also well established that we have an appellate duty to decide the question of the sufficiency of evidence under our review standard, which question is one of law. *Baker* v. *State*, (1956) 236 Ind. 55, 138 N.E.2d 641. In our performance of this duty, we sometimes *probe* and *sift* the evidence most favorable to the state, which is different from *weighing* the totality of the evidence in the case. *Liston* v. *State*, (1969) 252 Ind. 502, 250 N.E.2d 739. There are thus cases which hold, upon the particular sum of evidence or inferences favorable to the state therein presented to support some essential element of the crime, that the evidence was insufficient. *See, e.g., Shutt* v. *State*, (1977) 267 Ind. 110, 367 N.E.2d 1376. As stated in *Baker, supra*, 236 Ind. at 62, 138 N.E.2d at 645:

> "When we carefully examine the cases decided in the long history of this court which have reversed convictions because they were not sustained by sufficient evidence, it is apparent that the court was applying a test that some ma-

terial allegation had not been proved by substantial evidence so that no reasonable man could say that this issue had been proved beyond a reasonable doubt."

In these cases where the evidence most favorable to the state is wholly circumstantial, however, the question sometimes arises whether such evidence, on review, "must exclude every reasonable hypothesis of innocence." *Compare Manlove* v. *State,* (1968) 250 Ind. 70, 232 N.E.3d 874, *with McAfee* v. *State,* (1973) 259 Ind. 687, 291 N.E.2d 554. This question is not a new one, but is rather the subject of a long-standing and continuing debate on this court. *See, e.g., McAfee, supra; Manlove, supra; Christen* v. *State,* (1950) 228 Ind. 30, 89 N.E.2d 445; *McAdams* v. *State,* (1948) 226 Ind. 403, 81 N.E. 2d 671; *Osbon* v. *State,* (1938) 213 Ind. 413, 13 N.E.2d 223; *Gears* v. *State,* (1931) 203 Ind. 380, 180 N.E. 585; *Wrassman* v. *State,* (1921) 191 Ind. 399, 132 N.E. 673; *Robinson* v. *State,* (1919) 188 Ind. 467, 124 N.E. 489; *Lee* v. *State,* (1901) 156 Ind. 541, 60 N.E. 299; *Hamilton* v. *State,* (1895) 142 Ind. 276, 41 N.E. 588; *Cavender* v. *State,* (1890) 126 Ind. 47, 25 N.E. 875. The language in some of the above cases contradicts the language in others. Some of these cases purport to overrule the language in previous contradictory decisions; others do not even cite contrary language in previous contradictory decisions. And some opinions, such as the present one, attempt to review and synthesize all the law on the question of review standards in circumstantial evidence cases. Relative to this question, of whether the appellate review standard can in any way change depending on the nature of the evidence being reviewed, the statement in the 1921 *Wrassman* case, *supra,* 191 Ind. at 403, 132 N.E. at 674, has continuing validity:

> "Decisions are evidence of the law. The exact point decided must be kept in view. A court of review must invoke principles of law which the point involves. In doing this it sometimes announces a principle which applies in part to a court of review, and in part to a trial court; but does not always stop to limit the language used."

It is enough to recognize that our basic standard of review is the rule in all sufficiency questions, which questions are ones of law for this court which we have a duty to decide. Over the years, this process of deciding these questions has given rise to two well-established principles which are not in dispute. First, where there are two reasonable inferences arising from the circumstantial evidence in a case, one of guilt and another of innocence, it is not the duty or right of this court to reverse simply because *we* might believe the circumstances do not exclude every reasonable hypothesis of innocence. *Manlove, supra,* 250 Ind. at 77, 232 N.E.2d at 874. Second, a reasonable inference of guilt, sufficient to base a conviction upon, must be more than a mere suspicion, conjecture, conclusion, guess, opportunity, or scintilla. *Baker, supra,* 236 Ind. at 59-60, 138 N.E.2d at 644. These two principles are simply different facets of the same basic review standard. They appear in different cases, as does the above cited language concerning the exclusion of reasonable hypotheses of innocence, because differing fact situations lead this court to emphasize different facets of the standard. Thus the standard never changes, and individual cases decided under the standard, as suggested by the *Wrassman* and *Baker* cases, *supra,* stand only upon the particular fact situations therein presented to this court.

In the present case, the evidence most favorable to the state reveals that Thomas Schultz, the owner of a South Bend laundry, was found dead in his home in the early morning hours of July 17, 1971. He had been shot in the head in his bed, and his body dragged to a side door. The time of his death was estimated at between 12:45 and 1:30 a.m. on July 17.

One or two days before the day of the killing, a waitress served appellant in a restaurant in the neighborhood of the Schultz house. An hour or two before the murder, Robert Schultz, son of the decedent, had been leaving decedent's laundry when he was approached by a stranger who wanted

to locate decedent to discuss some business. Schultz gave the man his father's address. At trial he identified appellant as this man.

About midnight following the murder, appellant was seen in Denver, Colorado, by a friend, Sara Gustafson, at her house. He was dirty and unshaven and carrying luggage. Appellant at this time was renting an apartment from one Larry Stone, but Stone testified that appellant was not there on the weekend of the 17th; he had said he was going to Grand Rapids, Michigan, to lay carpeting. There was testimony that it is possible to drive from South Bend to Denver in less than twenty-four hours.

On July 30, 1971, Denver police executed a Colorado search warrant for appellant's apartment and found a .38 caliber Colt automatic pistol, minus its barrel. Schultz had been shot with a .38 caliber automatic pistol, either a Colt or a foreign imitation. Appellant told his landlord Larry Stone that he could be in trouble but that he had an alibi, and that he had discarded the barrel in the mountains where "no one would ever find it." Appellant told Denver police that he had discarded the barrel because it had been worn out by the use of home-loaded ammunition, containing excessive powder, and that he had not yet replaced it.

There was also evidence that the deceased and appellant had once met in Denver, and that they knew each other through a woman by the name of Frances Dee.

Having reviewed this evidence, under our review standard, we hold that it was sufficient to support the jury's finding that appellant Ruetz was guilty of first-degree murder.

The judgment of the trial court is affirmed.

Givan, C.J., Hunter, Prentice, JJ. concur; DeBruler, J. dissents with opinion.

### DISSENTING OPINION

DeBruler, J.—Although I am constrained to agree with the statement of the facts presented by the record as set out

in the majority opinion, and with the comments of the majority defining the scope of appellate review of the sufficiency of the evidence to support a conviction, I cannot accept the conclusion of the majority that the evidence presented in this case supports appellant's conviction. I am unable to distinguish in relevant detail the facts of this case from those in that line of cases holding insufficient to support a conviction evidence which merely establishes a suspicion of guilt. *Dunn* v. *State,* (1973) 260 Ind. 142, 293 N.E.2d 32; *Manlove* v. *State,* (1968) 250 Ind. 70, 232 N.E.2d 874; *Easton* v. *State,* (1967) 248 Ind. 338, 228 N.E.2d 6.

In *Dunn* the body of a man who had been shot was found in a wooded area. The accused was identified as having robbed and assaulted another man in the same general area, while armed with a rifle. Identification papers of the decedent were found in the immediate vicinity of the latter robbery. We held that this evidence tended to establish "nothing more than a mere suspicion of guilt," 260 Ind. at 146, 293 N.E.2d at 34, and was therefore insufficient to establish the defendant's guilt.

In *Manlove,* also a murder prosecution, the accused and victim left an Indianapolis tavern together on the evening before the victim's body, with five gunshot wounds, was found in the Indianapolis Water Company Canal. A waitress at the tavern saw a gun on the defendant's person. Several persons saw a light-colored automobile with two occupants parked in an alley near the tavern on the night of the murder. The victim's light-blue Ford was found by police in Chicago with spent slugs and bloodstains inside. The defendant was subsequently arrested in Chicago; he admitted traveling there under an alias, and told police that he had lost his pistol.

The Court noted the absence of evidence of the time of death, of ownership by the accused of a pistol of the type of the murder weapon, of any motive for the accused to kill the deceased, and of any substantial link between the defendant and the victim's automobile. Eight to twelve hours

had elapsed between the time the defendant and the victim left the tavern and the discovery of the latter's body, during which time the trier of fact did not know how long the victim was alive, and how long the victim and defendant were together. The Court held that the defendant's apparent flight to Chicago created no more than a suspicion of guilt; that the remainder of the evidence established only an opportunity to commit the murder, and that together suspicion and opportunity are insufficient indicators of guilt to sustain a conviction.

This case resembles *Manlove* in many details. No one ever saw appellant with the decedent or at the latter's house, nor was there any physical evidence of his presence at the murder scene. Appellant was identified as asking where the decedent could be found, however, shortly before the murder. This evidence, along with appellant's ownership of a .38 caliber automatic pistol, provides stronger evidence of an opportunity to commit the murder than was present in *Manlove,* but still presents only an opportunity. Appellant's actions in discarding the barrel of his pistol in the mountains is no stronger an indication of guilty knowledge than Manlove's use of an alias and flight to Chicago. It is certainly possible that appellant killed Thomas Schultz. A reasonable juror might suspect that he did. But no reasonable juror could find, with the certainty beyond a reasonable doubt necessary to properly reach a guilty verdict, that appellant committed this murder.

> "If mere opportunity or suspicion are sufficient to convict an accused of a felonious homicide . . . then the life and liberty of many innocent people may be summarily sacrificed. The law requires substantial evidence to prove guilty beyond a reasonable doubt. We cannot predicate an affirmance of guilt upon mere possibility because of opportunity or suspicion." *Manlove* v. *State,* 250 Ind. at 83, 232 N.E.3d at 881 (Citations omitted.)

While it is true, as the majority notes, that an appellate determination as to the sufficiency of the evidence is always

limited in precedential value to its particular facts, I do not perceive that this Court is, in consequence, relieved of the responsibility to seek consistency in its sufficiency holdings. Unless the Court presently believes that *Dunn* and *Manlove* were wrongly decided, I believe we are bound to harmonize our resolution of this appeal with the principles of those cases. I would reverse appellant's conviction.

NOTE.—Reported at 373 N.E.2d 152.