THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THOMAS W. LEWIS, Defendant-Appellant.

Fourth District   No. 12500

Opinion filed April 29, 1976.

Richard J. Wilson and Daniel D. Yuhas, both of State Appellate Defender's Office, of Springfield, for appellant.

Basil G. Greanias, State's Attorney, of Decatur, for the People.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

On April 19, 1973, the body of Corwin Robert Nicoll was discovered in a secluded area of Macon County, Illinois. Nicoll's death had resulted from multiple gunshot wounds. On April 24, 1973, an indictment was returned charging defendant Thomas Lewis with three counts of murder, and single counts of armed robbery, theft of property having value in excess of $150, and arson.

Defendant was the only living eyewitness to the shooting incident. At his jury trial, defendant testified that he fired the gun which killed Corwin Nicoll, but that the shots were discharged as he attempted to defend himself during a struggle with the decedent over a gun. Defendant's version of the events surrounding the shooting incident may be summarized as follows: While in a tavern on or about April 6, 1973, defendant was approached by a person identified only as "Dave." During their conversation, defendant stated that he owned a .45-calibre automatic pistol which he would sell as part of the purchase price of some heroin. The next day defendant returned to the tavern and received a phone call from "Dave," who made arrangements with defendant to meet a man who would sell some drugs to defendant. Defendant was given neither the name nor a description of his contact, but was merely told to go to an abandoned house west of Decatur, Illinois, where the drug seller would meet him at 3 p.m., April 17, 1973. On April 17, defendant hitchhiked to the area, carrying with him a .45-calibre automatic pistol with some ammunition, plus $50. While waiting for the man to arrive, defendant loaded the gun so that the man could test fire it. A truck arrived in the driveway. Defendant approached the vehicle and entered it. At this time the gun was protruding from defendant's coat, which he carried. The man said something on the order of, "Let's see what you got," and grabbed the gun. He started to swing the gun toward defendant who, not knowing if the man was going to hit or shoot him, grabbed the gun and struggled with the man. The gun went off several times. Defendant was shot in the hand. The gun was thrown to the floorboard and retrieved by defendant who fired two or more times at the man because he was afraid the man might kill him. Defendant was unable to recollect anything between the time of the shooting and the time that he "woke up" in decedent's truck, which was then stuck in a field near Mt. Zion, Illinois, some 12 miles from the point of the shooting. He could not remember how decedent's body was removed from the truck or how he got to Mt. Zion.

That night defendant procured the assistance of one William Farrar, and they attempted to destroy the truck by fire. Defendant stayed at Farrar's residence until April 19, 1973, when, upon learning that the police were seeking him, he surrendered. Defendant had brought a suitcase to

Farrar's residence which defendant left there when he surrendered to the police. That suitcase contained decedent's wallet with $2 inside, and decedent's yellow gym bag containing his toilet articles. Decedent's body was found in an area not visible from the road several miles from the spot at which defendant testified the shooting occurred. Traveling from the latter point to the former involves taking roads containing many turns. Decedent's right pants-pocket was turned inside out. Decedent had been shot five times with the shots leaving many different entrance and exit wounds. All shots entered on the right side. At least one of the bullet holes was caused by a gun fired while the muzzle was in contact with the clothing.

The jury found defendant guilty of murder, armed robbery, theft of property having a value in excess of $150, and arson. He was sentenced to a single term of imprisonment of not less than 40 years nor more than 120 years.

Defendant first contends that the evidence is insufficient to support his conviction for armed robbery, and that an armed robbery conviction unavoidably led to a murder conviction under the felony-murder doctrine. We will discuss the latter contention first.

■■■ Defendant was indicted for murder in three counts reflecting the subsections of section 9—1 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 9—1). The jury was instructed as to the four bases upon which a murder conviction may be returned under section 9—1. No error is claimed, nor was any committed, by this action. (*People v. Allen*, 56 Ill. 2d 536, 309 N.E.2d 544.) The jury returned a general verdict finding defendant guilty of murder. The rule is that a general finding of guilty is presumed to be based on any good count to which the proof is applicable. In cases in which an indictment contains several counts arising out of a single transaction, the effect of a general verdict is that the defendant is guilty as charged in each count. (*People v. Lymore*, 25 Ill. 2d 305, 185 N.E.2d 158.) Thus, even if we were to conclude that the evidence does not support an armed robbery and felony-murder conviction, we must affirm the murder conviction. The reason is that the evidence supports a murder conviction based on at least one of the other counts. The only evidence regarding the shooting incident was supplied by defendant himself who testified that he shot and killed the decedent in self-defense during a struggle. Decedent's body was found dumped in a ditch several miles from the spot of the purported struggle. Decedent's pants pockets were turned inside out and his body contained wounds caused by five bullets. Defendant was found in possession of decedent's billfold, gym bag and truck; defendant tried to destroy the truck. Defendant made a number of inconsistent statements explaining the injury to his hand, stating alternatively that the injury was caused by a chainsaw, by a car

motor he was fixing, and by a piece of glass thrown into the air by a spinning car wheel. Defendant developed that which was described as "selective amnesia," which prevented him from explaining his activity between the shooting and the time he "woke up" some miles away. It is within the province of the jury to draw inferences from the evidence and to determine the credibility of witnesses and the weight to be given their testimony. A jury's verdict will not be reversed on grounds of insufficient evidence unless there is a reasonable and well-founded doubt of guilt and the verdict is found to be palpably contrary to the weight of the evidence. (*People v. Goodwin*, 24 Ill. App. 3d 1090, 322 N.E.2d 569.) In the instant case, the jury could have discounted defendant's version of the incident and concluded from the facts and circumstances presented that the shooting was committed with the requisite mental state. We conclude that the evidence supports defendant's murder conviction on a basis other than felony-murder. Thus, defendant's contention that he was improperly convicted of felony-murder is mooted.

Defendant contends, and the State concedes, that if the murder conviction is affirmed, the armed robbery conviction must be reversed under the authority of *People v. Whittington*, 46 Ill. 2d 405, 265 N.E.2d 679. This court has previously noted the conflicting state of the law regarding multiple sentences and the single course of conduct rule. (*People v. Meredith*, 37 Ill. App. 3d 895, 347 N.E.2d 55.) In view of the State's position, we reverse the armed robbery conviction. Such action makes unnecessary a further discussion with regard to whether the evidence is sufficient to support that conviction.

Defendant contends that the armed robbery conviction precluded the jury from returning a verdict of voluntary manslaughter because a finding of armed robbery inexorably "led to a further conviction of murder." We do not agree. The jury was instructed as to defendant's theories of self-defense, voluntary manslaughter, and involuntary manslaughter, as well as murder. The jury rejected defendant's theories.

Defendant next contends that he was denied his right to a fair trial because the jury was instructed in a confusing manner. People's Instruction No. 17 reads:

"If you first find that the offenses of Armed Robbery and/or Theft of Property Exceeding $150.00 in Value were committed, and if you further find that the defendant had exclusive possession of recently stolen property from said Armed Robbery and/or Theft of Property Exceeding $150.00 in Value, and there was no reasonable explanation of his possession, you may infer that the defendant obtained possession of the property by Armed Robbery and/or Theft of Property Exceeding $150.00 in Value."

Defendant argues that the effect of the conjunctive/disjunctive language was to allow the jury to construe the instruction in the following manner:

"If you first find that offenses of Theft of Property Exceeding $150.00 in Value (was) committed, and if you further find that the defendant had exclusive possession of recently stolen property from said Theft of Property Exceeding $150.00 in Value, and there was no reasonable explanation of his possession, you may infer that the defendant obtained possession of the property by Armed Robbery."

Under this construction, defendant further asserts that the jury could have believed the self-defense theory, but found defendant guilty of a subsequent theft. The instruction converted the theft into armed robbery, which resulted in a felony-murder conviction.

We reject defendant's position. We first note that the defendant made no specific objection at the trial to the form of the instruction based on the interpretation he now urges. Although defendant's criticism of the instruction could have easily been obviated by a specific instruction and the submission of separate inference instructions for armed robbery and theft, respectively, the objection is not automatically waived under Supreme Court Rule 451 (Ill. Rev. Stat. 1973, ch. 110A, par. 451(c)), which states that "* * * substantial defects are not waived by failure to make timely objections thereto if the interests of justice require." As we stated in *People v. Price*, 96 Ill. App. 2d 86, 238 N.E.2d 881:

"This rule does not remove the necessity for making specific objections to instructions in the conference on instructions in the trial court. Rather it places squarely upon the shoulders of a defendant who seeks to avoid a waiver in the reviewing court the obligation to establish (a) that the defects in the instruction are substantial and (b) that its giving resulted in denying to the defendant justice and a fair trial." 96 Ill. App. 2d 86, 95, 238 N.E.2d 881, 885.

■■ Instructions are to be considered as a whole, not singularly. Where the instructions, considered together, correctly state the applicable law, a party may not single out one, which standing alone, might be inaccurate. (*People v. Epping*, 17 Ill. 2d 557, 567, 126 N.E.2d 366, 372; *People v. Juve*, 106 Ill. App. 2d 421, 427, 245 N.E.2d 293, 297.) In the case at bar, the jury was specifically instructed that the theft charge was limited to defendant's possession of decedent's truck, while the armed robbery charged referred to the taking by force of currency and other property from decedent's person or presence. The indictments likewise delineated the offenses. Hence, any potential confusion in Instruction No. 17 was resolved by the other instructions and the indictment. Defendant's contention must fail, moreover, for another reason. The error defendant urges is based on the assumption that the jury could have believed the defendant's self-defense

theory, yet "bootstrapped" the armed robbery and a felony-murder conviction onto a finding of theft. The jury was instructed, however, that in order to find the defendant guilty of murder, the State was required to prove beyond a reasonable doubt that defendant performed the actions which caused Corwin Nicoll's death; that when he did so he had either the proper state of mind for murder or was perpetrating an armed robbery; and *"Third: That defendant was not justified in using the force which he used."* Thus, before finding defendant guilty of murder, the jury was required to reject defendant's self-defense theory. That requirement disposes of the possible ramifications which defendant suggests. Although conjunctive/disjunctive instructions are not to be commended, any error in the instruction under consideration was harmless. Our examination of the entire set of instructions reveals that they were fair to defendant.

Defendant contends that he was denied his right to a fair trial by the closing argument of the prosecutor, which defendant argues inaccurately stated that he confessed to murder. Defendant cites the following statement:

> "He says the gun was not [*sic*] loose it was on the floor. He has confessed to murder, if you want to know the truth * * *."

The prosecutor continued:

> "He told you that after the gun was on the ground, being a bigger man, a younger man, proving that he was a stronger man than Mr. Nicol [*sic*], he picked that gun up and fired it into Mr. Nicol's [*sic*] body several other times. That, my friends, is murder, it is nothing but murder. He had control of the gun, he was stronger, bigger, younger, if what he says is true, he is still guilty of murder. Listen closely to the instructions, if he fired that * * * I am sure when he fired that into his body he didn't intend to protect himself at that time. If what he says is true Mr. Nicol [*sic*] wasn't struggling at that time. He said he had fallen forward. Well, I daresay [*sic*] you would fall forward if you had been shot through the heart * * *."

When considered in context and within the facts and circumstances of the evidence presented, the prosecutor's remarks were to the effect that defendant's own testimony establishes guilt of murder, rather than suggesting that defendant had confessed to the offense. The prosecutor's remarks did not exceed the bounds of proper and fair comment on the evidence.

■■ Defendant argues that he was denied his right to a fair trial when the trial court denied his request to provide a court reporter at the preliminary hearing. Defense counsel filed two written motions requesting a court reporter at the preliminary hearing, both of which

were denied. A preliminary hearing is a critical stage of the criminal process. (*Coleman v. Alabama*, 399 U.S. 1, 26 L. Ed. 2d 387, 90 S. Ct. 1999; *People v. Adams*, 46 Ill. 2d 200, 263 N.E.2d 490, *aff'd, Adams v. Illinois*, 405 U.S. 278, 31 L. Ed. 2d 202, 92 S. Ct. 916.) No statute, court rule, or case law in this State, however, requires the presence of a court reporter or recording device at a preliminary hearing in criminal cases. Without such requirements, and in the absence of a claim of actual prejudice by defendant, this contention cannot be sustained.

■■ Last, defendant contends that his sentence of 40 to 120 years is excessive. Defendant was convicted of four felonies, including murder of Corwin Nicoll by shooting him five times. A hearing on aggravation and mitigation was conducted before sentencing. The trial court is in a better position during the trial and hearing in aggravation and mitigation to make a sound determination as to the punishment to be imposed than are courts of review. (*People v. Sprinkle*, 56 Ill. 2d 257, 264, 307 N.E.2d 161, 164-165, *cert. denied*, 417 U.S. 935, 41 L. Ed. 2d 239, 94 S. Ct. 2650.) Our review of the record discloses no abuse of discretion in the sentence imposed.

Defendant's convictions for murder, theft, and arson and the sentence imposed thereon are affirmed. The conviction for armed robbery is reversed and the cause is remanded to the circuit court with directions to issue an amended *mittimus*.

Affirmed in part, reversed in part, and remanded with directions.

TRAPP, P. J., and SIMKINS, J., concur.