THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MARK F. HANSON *et al.*, Defendants-Appellants.

Third District   No. 75-388

Opinion filed January 7, 1977.

978

Braud, Warner, and Neppl and Westensee Ltd., both of Rock Island (Dennis DePorter, of counsel), for appellants.

William D. Henderson, State's Attorney, of Macomb (James E. Hinterlong and John X. Breslin, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

This appeal is taken from the conviction of the defendants, Mark F. Hanson and Thomas Borst, for the unlawful possession of and unlawful delivery of more than 30 grams but not more than 500 grams of cannabis on November 20, 1974, in violation of sections 4(d) and 5(d) of the Cannabis Control Act (Ill. Rev. Stat. 1973, ch. 56½, pars. 704(d), 705(d)). Both defendants were tried in one trial before the same jury.

The defendants filed a written motion for the presence of a court reporter to take the testimony at the preliminary hearing, but this motion was denied and the preliminary hearing was held without a court

reporter. However, there was a tape recording of the proceeding available to the defendants. Subsequently, the defendants filed a discovery motion requesting a list of witnesses to any oral confessions or written admissions made by the defendants to or in the presence of any law enforcement officer, as well as memoranda of such statements. In its first reply to the motion, the State said there were no such oral statements. Supplementally, however, the State admitted that oral confessions of participation in the sale made by the defendants after receiving *Miranda* warnings were witnessed by Harold Thompson and Harry Griffith of Western Illinois University's Department of Public Safety.

Prior to the opening statements, the defendants moved to exclude witnesses. However, the State's first witness, Mr. Bubonic, a chemist from the Pekin Crime Laboratory, was allowed to testify, out of order, over the objection by the defense that the witness had been present in the courtroom after the motion to exclude had been granted. This witness testified that Harry Griffith brought several items of evidence to the lab to be analyzed. The items were received by Bubonic from Griffith on November 27, 1974, but were not examined by Bubonic until January 15, 1975. Bubonic identified all these items offered as exhibits by the State as containing cannabis. Although Bubonic testified that four persons had access to the evidence vault in the laboratory and that it was possible for any of the other three persons to enter the vault during the period in which the exhibits were kept in the lab, he also testified that the bags containing the items of evidence were in a sealed condition when he received them from Griffith, that they were in a sealed condition when he removed them from the vault for testing, that he opened the large plastic bags immediately prior to testing and that the metal container marked exhibit 17 was sealed in addition to the bag in which it was contained being sealed. He further testified that the exhibits, except for the "People's Exhibit Tag," were in the same condition in the courtroom as they were on the day he tested them, that he resealed the large plastic bags after testing and that they were not again unsealed until the time of his testifying before the court. In addition, Bubonic testified he was the person who brought the exhibits to court.

The State's next witness was Patrick Crouch, an informant, whose testimony concerning his activities on November 19 and November 20 was objected to on two grounds. An objection was made to his testimony about November 19 because it covered a date other than the date alleged in the indictment. This objection was overruled. The witness then testified that he went to room 1238 of Wetzel Hall and met Borst who said he had some marijuana but "it was more or less his roommate's." The defense objected to the testimony about such statement by the defendant to the informant-witness because Crouch's name and the statement was

not disclosed pursuant to the discovery demand of witnesses to confessions or admissions. This objection was also overruled. Crouch testified that Borst told him to return that evening. When he returned in the evening, Hanson gave the witness a sample of the marijuana and then negotiated for a delivery of marijuana the next day, November 20. On November 20, 1974, Crouch testified, he went to Wetzel Hall with Griffith after he, Crouch, had been "strip" searched. Crouch proceeded to room 1238, where Borst "pulled the box from the shelf area and handed it to Hanson and he handed it to me."

The box contained a substance "similar to grass" and Crouch "picked up approximately two" baggies from the box. Crouch then stated that he "laid the money down on the table and Hanson picked it up and handed it to Borst * * *." The State's exhibits 15 and 16, Crouch testified, appeared similar to the two bags he received on November 20, 1974, in room 1238. Crouch said that when he left the room, he went down two flights of stairs, met Griffith and gave the two bags to Griffith.

Officer Harry Griffith was then called as a State's witness. Griffith testified that on November 20, 1974, Pat Crouch came to him and handed him two bags of marijuana. These bags were identified by Griffith as People's exhibits 15 and 16. Griffith said that after receiving the bags from Crouch, he went to room 1238 of Wetzel Hall. A search of the room was conducted and 12 bags of a green plant material were found. These were identified as People's exhibits 26 through 30. Griffith testified that he took all of these items to the security office at Western Illinois University on November 20, 1974. In addition to testifying that he transported the evidence seized to his office, the witness testified that he placed the pieces of evidence in plastic bags, marked them, and placed them in evidence storage after he had sealed the bags and marked them with his initials and the case number. They were in the same condition when he removed them from evidence storage to transport them to the laboratory for delivery to Mr. Bubonic. On the 27th day of November, Griffith said he took the items to Bubonic to be tested. The State attempted to introduce exhibits 2 through 35, but they were objected to on the basis that the chain of custody was not complete. The trial court, at that point, withheld its ruling.

On cross-examination, Griffith was asked if he recalled testifying at the preliminary hearing. The State objected to the cross-examination because there was no transcript of the preliminary hearing. The defendants intended to impeach the witness with use of a prior inconsistent statement, but the court sustained the State's objection to this line of cross-examination. The trial judge's reasoning was not based on the lack of a transcript of that hearing, but rather was based upon the fact that he did not believe that an inconsistency existed between their direct testimony

and the purported prior testimony. The defendants tendered an offer of proof as to what the witness said at the preliminary hearing. Although the defendants could have completed the impeachment by calling other persons who were present and heard the purportedly inconsistent statements, they had not supplied any list of such witnesses, nor did their offer of proof indicate that other witnesses could testify to the statement. The purported inconsistency was said to exist upon a tape recording of the preliminary hearing. However, this tape recording was not produced to the State on discovery, nor was it authenticated.

When Mr. Harold Thompson was called as a State's witness, the defendants again tried to impeach this witness with a prior statement he made at the preliminary hearing. Again, the State's objection was sustained. There was also an objection to the introduction of People's exhibit 14 which was alleged to be the marijuana that was given to Crouch on November 19, 1974, on the grounds that it tended to show the commission of a different crime at a different time. This objection was denied. Furthermore, the court felt that there was no contamination of the exhibits shown, nor any opportunity for contamination, and allowed the State's exhibits to be admitted. In addition, Thompson testified that both of these defendants occupied room 1238 at Wetzel Hall, Western Illinois University. The defendants offered no testimony.

During closing argument, the State argued, among other things, that the defendants "were in the business of selling marijuana to other people * * *. No question about it. There is no contradictory evidence to that fact." This comment was objected to as, in effect, a comment that the defendants did not testify and hence shifted the burden of proof to the defendants. The objection was overruled.

Both defendants were convicted of both counts, and both defendants were sentenced to three years probation with the condition that they serve four months in jail and pay a fine of $1,000. From these convictions, both defendants appeal. We affirm.

■■ The denial of a court reporter is neither a denial of due process nor a denial of equal protection. Although the State must afford indigent defendants an equal opportunity to appeal, the State is not required to provide a stenographer's transcript in every case a defendant can not afford to have one made as long as there is some other means to allow for adequate and effective appellate review. (*Griffin v. Illinois*, 351 U.S. 12, 100 L. Ed. 891, 76 S. Ct. 585 (1956).) The underlying philosophy of requiring a transcript is that an indigent should be provided the same opportunity to appeal as any other defendant. (See *Roberts v. LaVallee*, 389 U.S 40, 19 L. Ed. 2d 41, 88 S. Ct. 194, (1967), in which case the United States Supreme Court held that a New York statute allowing a transcript of preliminary hearings to be furnished if the defendant pays for it

violates an indigent defendant's right to equal protection. "No [Illinois] statute, court rule or case law, however, requires the presence of a court reporter or recording device at a preliminary hearing in criminal cases." (*People v. Lewis*, 37 Ill. App. 3d 870, 876, 346 N.E.2d 377, 382 (4th Dist. 1976).) Therefore, the denial of a transcript of the preliminary hearing is not a denial of due process. (*People v. Lewis*, 37 Ill. App. 3d 870, 346 N.E.2d 377; *People v. Givans*, 83 Ill. App. 2d 423, 228 N.E.2d 123 (1967).) Nor is it a denial of equal protection. The defendants in this case were not indigents and could have provided their own transcript. Furthermore, if no verbatim transcript is available, adequate and effective appellate review is available under the procedure provided in Supreme Court Rule 323(c), (d) (Ill. Rev. Stat. 1973, ch. 110A, par. 323(c), (d)), allowing for a stipulated or certified report of the proceedings. The defendants also argue that since the purpose of both grand jury hearings and preliminary hearings is to determine probable cause and a transcript of all grand jury hearings is required by section 112—7 of the Code of Criminal Procedure (Ill. Rev. Stat. 1975, ch. 38, par. 112—7), one must also be provided of a preliminary hearing. However, that statute was not effective until October 1, 1975, almost 10 months after the preliminary hearing in question. Moreover, had the legislature intended to require transcripts of preliminary hearings it would have amended section 109—3, not section 112—7.

■■ Although the trial court refused to allow the defendants to lay a foundation on cross-examination to impeach the State's witnesses by alleged prior inconsistent statements made during the preliminary hearings, this was not reversible error. Surely such questioning is permissible on cross-examination as a general rule. However, there was no transcript of the preliminary hearing with which to impeach. Nor were any witnesses which could have testified to the purported inconsistencies listed by the defense as witnesses. Nor did the defendants' offer of proof indicate other witnesses who could testify to the inconsistencies. In addition, the tape recording of the preliminary hearing which the defense had available to it was neither produced to the State on discovery nor authenticated. Lastly, on the basis of the defendants' offer of proof, the trial judge determined that there were no prior inconsistent statements with which to impeach the witnesses. Although these circumstances cast doubt on whether the inconsistent statements alleged were actually made, they do not effect the propriety of the impeachment procedure. The defendants' counsel should have been allowed to ask the questions because the witness might have admitted making prior inconsistent statements. Nevertheless, because of the overwhelming evidence of the defendants' guilt and because the allegedly inconsistent statements concern only whether Officer Griffith was present when Officer

Thompson conducted field tests of some of the contraband, the trial court's error had a minimal effect and is, therefore, harmless error.

■■ Concerning the testimony of Crouch, the defendants raise two issues. The first is whether the statements made by the defendants to Crouch prior to and during the delivery of cannabis were oral confessions to a law-enforcement officer, requiring that, on discovery, Crouch be identified as a witness to the making of such statements. During discovery, the defendants requested that the State furnish a list of witnesses to any oral confessions, together with memoranda thereof, made to any law-enforcement officer of this or any other State. The State did not list Crouch, an informant working for the Department of Public Safety at Western Illinois University. A confession is "a voluntary acknowledgment of guilt after the perpetration of an offense, and it does not embrace mere statements or declarations of independent facts from which guilt may be inferred * * *." (*People v. Stanton*, 16 Ill. 2d 459, 466, 158 N.E.2d 47, 51 (1959); accord, *People v. Dockery*, 72 Ill. App. 2d 345, 219 N.E.2d 687 (1st Dist. 1966).) The statements testified about by Crouch were made prior to and during the offense, not after its perpetration. Nor were they voluntary acknowledgments of guilt, but were statements from which guilt must be inferred. Therefore, Crouch was properly allowed to testify about those statements.

■■ The second issue concerning Crouch's testimony is whether a portion of it should have been refused admission because it alleged, or tended to allege, the commission of offenses by the defendants at a time other than that for which they are now on trial. Where the court is dealing with a prosecution of an offense involving narcotics, evidence of other offenses is inadmissible except where the other offense is part of the *res gestae* of the offense charged or it helps to prove motive, intent, premeditation, guilty knowledge or a common plan or scheme. (*People v. Lewerenz*, 24 Ill. 2d 295, 181 N.E.2d 99 (1962).) In short, there must be some connection between the facts proved and the offense charged. (*People v. Rivas*, 5 Ill. 2d 556, 126 N.E.2d 638 (1955).) The evidence presented in this case clearly shows an ongoing transaction. The activity on November 19 was part of the negotiation leading up to the transfer which occurred on November 20. Therefore, the activity on November 19 was within the *res gestae* of the offense charged. Furthermore, the evidence tends to show an intent on the part of the defendants to possess and sell the cannabis. For these reasons, the testimony of Crouch was properly allowed.

■■ When contraband is sought to be introduced, the State must show a sufficient chain of custody to negate any possibility of tampering or substitution. (*People v. Anthony*, 28 Ill. 2d 65, 190 N.E.2d 837 (1963).) The defendants contend that the chain of custody proven in this case was

insufficient because the contraband could have been tampered with between the time of its seizure and the time of the trial. In *Anthony*, the police officer took the contraband from the defendant and placed it in an envelope, which was then sealed. Before delivering the envelope to the crime lab, the police officer wrote his name across the back flap and covered it with cellophane tape. The chemist who examined the narcotics found the envelope sealed, in the same condition as the police officer described and with no evidence of tampering. This was held to be sufficient evidence to render admissible the testimony of the result of the chemical analysis. Therefore, we conclude that the chain of custody set out in the facts of the case at bar is clearly a sufficient chain of custody and the cannabis was properly admitted into evidence.

■■■ The defense next contends that the State failed to prove that Borst performed any act to aid in the commission of the sale, aside from his mere presence. The defense also contends that the State failed to prove that Borst was an occupant of the room in which the cannabis was discovered by the police. The law is settled. To be legally accountable for another's conduct under section 5—2(c) of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 5—2(c)), the State must prove the defendant solicited, aided, abetted, agreed or attempted to aid in the planning or commission of the offense, and these acts were done with the specific intent to promote or facilitate the commission of the offense. (*People v. Marquis*, 24 Ill. App. 3d 653, 321 N.E.2d 480 (3rd Dist. 1974).) Aiding and abetting require affirmative acts. (*People v. Barnes*, 311 Ill. 559, 143 N.E. 445 (1924).) Mere presence at the scene of the crime is insufficient (*In re Woods*, 20 Ill. App. 3d 641, 314 N.E.2d 606 (1st Dist. 1974)), even with knowledge that a crime is being committed. (*People v. Banks*, 28 Ill. App. 3d 784, 329 N.E.2d 504 (1st Dist. 1975).) However, Crouch testified that he saw Borst take the marijuana off a shelf and hand it to Hanson on November 20, and that, after Crouch paid Hanson, Hanson handed the money to Borst. From this evidence a jury could find an affirmative act amounting to aiding and abetting. As to the possession count, the law is that where the contraband is found on the premises rather than the defendant's person, there must be some evidence that the defendant had control over the premises. (*People v. Mosley*, 131 Ill. App. 2d 722, 265 N.E.2d 889 (3rd Dist. 1971).) Officer Thompson testified that room 1238 was occupied by both Hanson and Borst. There was sufficient evidence for a jury to find Borst guilty of the unlawful possession and the unlawful delivery of cannabis beyond a reasonable doubt.

■■ The defendants next argue that the prosecutor made statements during closing argument which could be construed as a comment on the defendants' failure to testify. The statement was:

"These defendants were in the business of selling marijuana to

other people, students, resident of the WIU campus. No question about it. There is no contradictory evidence to that fact."

A prosecutor should refrain from making statements during closing argument which the jury may construe as a comment on the defendants' failure to testify. (*People v. Kelley*, 29 Ill. 2d 53, 193 N.E.2d 21, (1963).) Furthermore, it would be improper for the prosecution to state or imply that the defendants had the burden of introducing evidence to create a reasonable doubt of guilt. However, the statement made by the prosecution during the closing argument of the case in question fits into neither of these categories. The prosecutor is merely commenting on the evidence, suggesting the only inference he believes the jury can raise from the evidence presented and opining that there is no evidence from which a contrary inference can be raised. There was no error in the trial court overruling the defense's objection to this statement.

■■ The trial court did not err in imposing, as a condition of probation, the requirement that each defendant serve the first 120 days of the 3-year probation in the common jail of McDonough County, Illinois. Section 5—6—3 of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—6—3), provides in pertinent part:

"(a) The conditions of probation and of conditional discharge shall be that the person:

(1) not violate any criminal statute of any jurisdiction; and

(2) make a report to and appear in person before such person or agency as directed by the court.

(b) The court may in addition to other conditions require that the person:

(1) serve a term of periodic imprisonment under Article 7 for a period not to exceed 2 years or the maximum term of imprisonment provided for the offense, whichever is less;

(2) pay a fine;

\* \* \*

(d) The court shall not require as a condition of the sentence of probation or conditional discharge that the offender be committed to a period of imprisonment in excess of 6 months.

Persons committed to imprisonment as a conditon of probation or conditional discharge shall not be committed to the Department of Corrections.

(e) The Court may combine a sentence of periodic imprisonment under Article 7 with a sentence of probation or conditional discharge."

There is no ambiguity in this statute as the defendants contend. The trial court has the power to impose a term of imprisonment, not in excess of 6 months. Under the prior statute, a split sentence was prohibited except

where probation was used in conjunction with periodic imprisonment, as provided in section 5—7—1 *et seq.* of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—7—1 *et seq.*). The defendants contend that subsection (d) makes no sense when compared to the additional probation conditions of subsection (b) because subsection (b) was never amended to reflect that a sentence of imprisonment, other than periodic, could be a condition to a probationary sentence. However, subsection (e) was subsection (d) of the previous act. Taking the import of the new subsections (d) and (e) together, the statute clearly provides that a court, as a condition to probation, may impose a split sentence, as well as a sentence of periodic imprisonment subject to the limitations of subsection (b)(1). And this is further supported by the language of subsection (b) that the list of conditions set out there is not exclusive. Since a split sentence may be imposed as long as the period of imprisonment does not exceed 6 months and the sentence in this case does not in fact exceed 6 months, the sentence imposed in the instant case is not erroneous.

■■ Furthermore, the evidence presented warranted the trial judge in believing that Hanson and Borst were equally culpable and, therefore, warranted the imposition of equal sentences.

· For the reasons set out above, we affirm the judgment of the Circuit Court of McDonough County.

Affirmed.

ALLOY, P. J., and STOUDER, J., concur.