Diane Kendrick **WILLIAMS**, Appellant,

v.

**STATE of Indiana, Appellee.**

No. 779S202.

Supreme Court of Indiana.

Sept. 5, 1980.

F. Laurence Anderson, Jr., Gary, for appellant.

Theodore L. Sendak, Atty. Gen., Wesley T. Wilson, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant–appellant Diane Kendrick Williams and her husband, Dr. Carl N. Williams, were charged in Lake Superior Court with conspiracy to commit murder, Ind. Code § 35–41–5–2 (Burns 1979 Repl.). They were tried jointly to a jury and convicted. Carl Williams was sentenced to thirty years imprisonment, and appellant Diane Williams was sentenced to a twenty–year term. The trial court then suspended all but five years on each of their sentences. This appeal by Diane Williams alone followed.

Appellant presents two alternative arguments on this appeal. She first claims that the evidence does not sustain the verdict. Specifically, she claims the evidence is insufficient on the elements of intent and agreement. Alternatively, appellant argues that she and her husband were entrapped by a police officer into forming this conspiracy.

In determining a question of sufficiency of the evidence, this Court will neither reweigh the evidence nor assess the credibility of witnesses. *Stanley v. State,*

(1980) Ind., 401 N.E.2d 689, 693; *Ruetz v. State*, (1978) 268 Ind. 42, 49, 373 N.E.2d 152, 156. These are the jury's functions, and the jury may believe or disbelieve whomever they choose. *Riggenbach v. State*, (1979) Ind., 397 N.E.2d 953, 956; *Sypniewski v. State*, (1977) 267 Ind. 224, 232, 368 N.E.2d 1359, 1364. Our task is to examine whether there is substantial evidence of probative value from which the jury could have found the defendant guilty beyond a reasonable doubt. *Ruetz v. State, supra.*

■ Ind. Code § 35–41–5–2 (Burns 1979 Repl.) codifies the offense of conspiracy. That section provides:

"*Conspiracy.*–(a) A person conspires to commit a felony when, with intent to commit the felony, he agrees with another person to commit the felony. A conspiracy to commit a felony is a felony of the same class as the underlying felony. However, a conspiracy to commit murder is a class A felony.

(b) The state must allege and prove that either the person or the person with whom he agreed performed an overt act in furtherance of the agreement. . . ."

Thus, in this case, the prosecution must have proved that Diane Williams had the intent to commit murder; that she agreed with another person to commit murder; and that some overt act was performed in furtherance of that agreement. The requisite intent, of course, may be inferred from the acts committed and the circumstances surrounding the case. *Young v. State*, (1971) 257 Ind. 173, 177, 273 N.E.2d 285, 287.

■ In addition this Court has explained conspiracy in various terms. We stated in *Kelley v. State*, (1936) 210 Ind. 380, 394, 3 N.E.2d 65, 72, that there must be an agreement, in the sense of a common purpose and understanding, to commit the intended felony, by joining at its formation or by participating in it after it has been formed. It is sufficient if the minds of the parties meet understandingly to bring about an intelligent and deliberate agreement to commit the offense, even though the agreement is not manifest by any for-

mal words. *Mattingly v. State*, (1957) 237 Ind. 326, 338–39, 145 N.E.2d 650, 656; *Robertson v. State*, (1952) 231 Ind. 368, 370, 108 N.E.2d 711, 712; *Coughlin v. State* (1950) 228 Ind. 393, 395, 92 N.E.2d 718, 719. To prove a conspiracy, the prosecution does not need to show a formal arrangement or the parties' use of specific words. *Gaynor v. State*, (1966) 247 Ind. 470, 474, 217 N.E.2d 156, 159; *Taylor v. State*, (1956) 235 Ind. 126, 130, 131 N.E.2d 297, 299; *Booher v. State*, (1926) 198 Ind. 315, 322, 153 N.E. 497, 499. A conviction may rest on circumstantial evidence alone; while evidence of a mere relationship or association is not sufficient, a conspiracy may be inferred from acts of the parties in pursuance of an apparent criminal purpose they have in common. *Lane v. State*, (1972) 259 Ind. 468, 473, 288 N.E.2d 258, 260–61; *Archer v. State*, (1886) 106 Ind. 426, 432, 7 N.E. 225, 229. *See DeVault v. State*, (1970) 254 Ind. 546, 559, 261 N.E.2d 232, 239; *Mattingly v. State, supra; Johnson v. State*, (1935) 208 Ind. 89, 95, 194 N.E. 619, 621.

■ The defense of entrapment is also at issue in this case. Ind. Code § 35–41–3–9 (Burns 1979 Repl.) codifies this defense:

"*Entrapment.*–(a) It is a defense that:

(1) The prohibited conduct of the person was the product of a law–enforcement officer, or his agent, using persuasion or other means likely to cause the person to engage in the conduct; and

(2) The person was not predisposed to commit the offense.

(b) Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment."

Accordingly, the entrapment defense raises two questions: (1) whether the government agency initiated or actively participated in the criminal activity; and (2) whether the defendant was predisposed to commit the crime and the proscribed activity was thus not solely the government's idea. *Cyrus v. State*, (1978) Ind., 381 N.E.2d 472, 473–74; *Hutcherson v. State*, (1978) Ind., 380 N.E.2d 1219, 1221; *Hardin v. State*, (1976) 265 Ind. 635, 639, 358 N.E.2d 134, 136. When the

accused raises this defense, the prosecution must prove that he was not innocently lured and enticed into the criminal activity. *Hall v. State*, (1980) Ind., 403 N.E.2d 1382, 1391; *Henry v. State*, (1978) Ind., 379 N.E.2d 132, 138. Whether the accused was the subject of entrapment is a question for the jury, and we will review this matter on appeal as we do other sufficiency–of–evidence questions. *Stewart v. State*, (1979) Ind., 390 N.E.2d 1018, 1021; *Thompson v. State* (1972) 259 Ind. 587, 590, 290 N.E.2d 724, 726, *cert. denied*, (1973) 412 U.S. 943, 93 S.Ct. 2788, 37 L.Ed.2d 404. *See Cyrus v. State, supra; Hutcherson v. State, supra. See generally Ruetz v. State, supra.*

Turning to the facts of the case before us, the testimony and evidence reveals the following sequence of events. In early January, 1978, Hammond police officer James Lawson was working as an undercover agent for the Drug Enforcement Administration branch of the United States Department of Justice. During the course of his work for the federal government, he came in contact with Dr. Carl N. Williams and Diane Kendrick Williams, the defendants in this case. On January 5, Lawson was in the Williams' home in Gary, Indiana, discussing certain other matters not related to the present case. Dr. Williams and appellant both engaged in conversation with Lawson. Late in the afternoon, appellant began reading that day's edition of the Gary *Post–Tribune*. The January 5 edition of the *Post–Tribune* carried an article on page one under the by–line of Alan Doyle. This article related how the Williams had been charged in connection with an automobile theft. Appellant Diane Williams brought the story to the attention of Dr. Williams and Officer Lawson. Dr. and Mrs. Williams became very angry over the contents of the article. Appellant explained the general content of the story to Lawson, and he remarked, "It sounds like they are really trying to get you." Dr. Williams explained that his family had been involved in politics and that Gary was a "dog town."

When Diane Williams asked what they were going to do about the article, Dr. Williams stated that he wanted "something" done about it. Lawson's suggestion that they talk to their attorneys and pursue legal remedies was rejected out of hand by both Dr. Williams and appellant. Diane Williams stated that lawyers were of no help, and Dr. Williams said he was tired of dealing with lawyers. Both remained very angry over the article, and appellant again asked what they were going to do about Doyle and his article. Dr. Williams then stated that he wanted Doyle "shut up."

Dr. Williams then asked Lawson if he could "undertake an extra service." Lawson asked what he was referring to, and Dr. Williams repeated that he wanted Doyle "shut up." When Lawson asked him exactly what he meant by "shutting someone up," the doctor said he wanted to stop what he called "this malicious slander." Lawson remarked that breaking somebody's legs and arms wouldn't necessarily shut them up, and appellant Diane Williams agreed. Dr. Williams asked Lawson again if he would "perform an extra service." He stated that he wanted Alan Doyle killed, and he asked Lawson if he knew someone who would do the job. Lawson said he could put them in touch with someone who would, but that whoever he contacted would want to know "specifics" about the intended victim, such as his appearance, his place of employment, and what kind of car he drove. Dr. Williams said he would go to the newspaper office to learn this information, but appellant Diane Williams counselled against such an idea, saying it would connect Dr. Williams too closely with what was going to happen.

Lawson and Dr. Williams left the room to pick up a two–way police radio Williams possessed, because he thought it would be helpful in their plans. A short time later, they returned to the room where Diane was sitting. Lawson reiterated his feeling that the people he contacted to perform the killing would need to know who Doyle is, where he worked, and the kind of car he drove. Appellant Diane Williams volunteered to obtain this information.

The next day, Lawson returned to the Williams home with Michael Bolin, another undercover police officer. Lawson identified Bolin to Dr. Williams as the person who would perform the killing for them. Bolin demanded one thousand dollars for his services, half to be paid at that time, and the remainder after the job was completed. Dr. Williams then paid five hundred dollars to Bolin. Appellant Diane Williams was not present during this conversation.

On January 12, 1978, Lawson and Bolin went back to the Williams residence. After a brief conversation, Lawson, Bolin and Dr. Williams went for a drive in the agents' car. At their request, Dr. Williams directed them to the location of the Post–Tribune offices in Gary. During the course of the conversation in the car, Dr. Williams stated on two occasions that appellant Diane Williams knew of and concurred in their plan to kill Alan Doyle.

We think there was substantial evidence from which the jury could have found beyond a reasonable doubt that Diane Williams had the intent to kill Alan Doyle, and that she had an intelligent understanding with Dr. Williams and Lawson that the killing would be done. Clearly, Dr. Williams committed several overt acts in pursuance of this agreement and plan. Thus, the evidence is sufficient to support the jury's finding that appellant Diane Williams conspired to commit murder. Likewise, the evidence fully supports a finding that appellant was not induced to enter into this conspiracy and that she was predisposed to do so. There was sufficient evidence to support the jury's rejection of appellant's entrapment defense.

The judgment of the trial court is affirmed.

All Justices concur.