

FILED

Jun 17 2015, 8:12 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Gerald A. Kemper,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

June 17, 2015

Court of Appeals Case No.
15A01-1408-CR-340

Appeal from the Dearborn Circuit
Court.
The Honorable James D. Humphrey,
Judge.
Cause No. 15C01-1207-FB-35

**Baker, Judge.**

[1] Gerald Kemper appeals his convictions and sentences for Robbery Resulting in Bodily Injury,[1] a class B felony, Conspiracy to Commit Robbery While Armed with a Deadly Weapon,[2] a class B felony, and Unlawful Possession of a Firearm by a Serious Violent Felon,[3] a class B felony. Finding that the State presented insufficient evidence from which a reasonable jury could conclude that Kemper and Malik Abdullah conspired to commit robbery, we reverse Kemper's conviction and sentence for conspiracy to commit robbery while armed with a deadly weapon. In all other respects, we affirm.

## Facts

[2] On July 17, 2012, Kemper met Abdullah at the Hollywood Casino in Lawrenceburg. The two later drove to a bar in Abdullah's hometown of Forest Park, Ohio. Abdullah went home after this, but allowed Kemper to continue to use his vehicle. Kemper returned to Abdullah's house at around three o'clock in the morning on July 18, 2012. Although the two did not discuss where they were going, Kemper proceeded to drive back to Lawrenceburg.

[3] Once back in Lawrenceburg, Kemper slowed the vehicle as he passed a BP station. He initially drove past the BP station and continued to drive around

---

[1] Ind. Code § 35-42-5-1.

[2] I.C. § 35-42-5-1; Ind. Code § 35-41-5-2.

[3] Ind. Code § 35-47-4-5.

the area. However, he eventually returned to the BP station and parked the vehicle. Kemper then tied a black t-shirt around his head and removed a gun from his pocket. Abdullah, who was in the passenger's seat, "was in shock" as he watched Kemper exit the vehicle and proceed toward the BP station. Tr. p. 201. Abdullah remained in the car and eventually moved to the driver's seat, preparing to drive away.

[4] Kemper entered the BP station and aimed his gun at James Lafollette, who was working behind the counter that morning. Kemper demanded that Lafollette give him the money in the register. Lafollette froze in fear and did not respond for a few seconds. Kemper then aimed the gun at Lafollette's leg and shot him in the thigh. Kemper continued to demand money from Lafollette, who at this point opened the register and told Kemper to take it. Kemper took the money and left the BP station. Lafollette called 911.

[5] Upon leaving the station, Kemper was spotted by Jack Morgan, a newspaper delivery man. Morgan watched as Kemper returned to Abdullah's vehicle. Thinking Kemper looked suspicious, Morgan called 911 and followed Abdullah's vehicle as it drove away. He continued to follow the vehicle as it went onto US 50 and accelerated to around 90 or 100 miles per hour. Morgan eventually saw a police vehicle approaching him and pulled over. As he pulled over, Morgan watched Abdullah's vehicle continue on US 50.

[6] Abdullah soon noticed police vehicles with their lights on headed in the opposite direction. He turned onto I-275 in an attempt to evade them.

However, fearing an eventual shootout with the police, Abdullah quickly decided to drive off the road and into the woods by the side of the interstate. The vehicle crashed through a fence and some trees and eventually came to a stop. Kemper then jumped out of the vehicle and ran off into the woods.

[7] Abdullah remained in the vehicle until sunrise. By this point, he had received several phone calls from Kemper telling him to get out of the area. Abdullah exited the vehicle and proceeded to walk toward US 50. Kemper phoned Abdullah again and told him to stay out of the open. Abdullah was eventually pulled over by police as he walked down US 50.

[8] The State filed an initial charge on July 14, 2012, against Abdullah and "John Doe," as the investigation had not yet led to Kemper. However, police later identified Kemper through discovery of the gun used to commit the crime and a search of Abdullah's vehicle and cell phone. The State amended its initial charge to include Kemper, charging him with robbery resulting in bodily injury, robbery while armed with a deadly weapon, conspiracy to commit robbery while armed with a deadly weapon, aggravated battery, and unlawful possession of a firearm by a serious violent felon. Prior to trial, Abdullah entered into a plea agreement with the State in which he pleaded guilty to conspiracy to commit robbery.

[9] Kemper's jury trial began on May 7, 2014. During trial, the defense learned that the State had in its possession a videotaped interview with Jack Morgan in which Morgan identified someone other than Kemper as the robber. The

defense argued that it had never been given a copy of this interview and moved for a mistrial. The prosecution maintained that it had sent the defense a copy. The trial court denied the motion, allowing the defense time to view the videotaped interview and use it to impeach Morgan's testimony. The trial concluded on May 14, 2014, and the jury found Kemper guilty as charged.

[10] The trial court vacated Kemper's convictions for robbery while armed with a deadly weapon and aggravated battery on double jeopardy grounds. Kemper remained convicted of robbery resulting in bodily injury, conspiracy to commit robbery while armed with a deadly weapon, and unlawful possession of a firearm by a serious violent felon. The trial court then sentenced Kemper to twenty-year consecutive terms for each of these remaining convictions, resulting in an aggregate sentence of sixty years. Kemper now appeals.

## Discussion and Decision

[11] Kemper challenges his convictions on several grounds. He argues that the trial court erred in denying his motion for a mistrial. He also maintains that the State presented insufficient evidence to sustain his convictions and that his convictions violate double jeopardy principles. Finally, Kemper argues that his sentence is inappropriate in light of the nature of the offenses and his character.

## I. Motion for Mistrial

[12] During trial, Jack Morgan identified Kemper as the passenger in Abdullah's car on the morning of the crime. After Morgan's in-court identification, the defense became aware that the State was in possession of two videotaped

interviews of Morgan. One of the interviews was conducted on the date of the crime and the other was conducted approximately ten days later. During the second interview, Morgan was shown a photo lineup and appeared to misidentify both the driver and the passenger of Abdullah's vehicle on the morning of the robbery. Tr. p. 432. The defense argued that it had not been given a copy of the videotaped interviews and moved for a mistrial.

[13] The trial court denied Kemper's motion for mistrial, finding no intentional misconduct on the part of the State. The trial court allowed the defense additional time to review the interviews and instructed the State to make Morgan available for further cross-examination should the defense wish to question him. Kemper argues that, despite these measures, he was irreparably prejudiced because he was not aware of Morgan's misidentification when Morgan was originally cross-examined.

[14] The granting of a mistrial lies within the sound discretion of the trial court and we will reverse only upon a showing of an abuse of discretion. *Lucio v. State*, 907 N.E.2d 1008, 1010 (Ind. 2009). The granting of a mistrial is an extreme remedy that is warranted only when no other action can be expected to remedy the situation. *Id.* at 1010-11. "The overriding concern is whether the defendant was so prejudiced that he was placed in a position of grave peril." *Id.* at 1010 (quotations omitted).

[15] Here, the trial court could not determine whether the defense had in fact received a copy of the videotaped interviews. However, it did find that the

State had not intentionally withheld the interviews. The trial court sought to remedy the situation by allowing the defense time to review the interviews, instructing the State to make Morgan available for further cross-examination, and allowing the defense to show the interviews to the jury—which the defense did. Tr. p. 539. We believe that, under these circumstances, the trial court's actions served as an effective remedy and that Kemper was not placed in a position of grave peril. Consequently, we cannot say that the trial court abused its discretion in denying Kemper's motion for mistrial.

## II. Sufficiency of the Evidence

[16] When reviewing the sufficiency of the evidence to support a conviction, we will neither reweigh the evidence nor assess the credibility of the witnesses. *Moore v. State*, 27 N.E.3d 749, 754 (Ind. 2015). We will consider only the probative evidence and reasonable inferences that support the verdict. *Id.* We will affirm unless no reasonable fact finder could find the elements of the crime proven beyond a reasonable doubt. *Id.*

[17] Initially, Kemper makes several arguments that amount to no more than a request that we reweigh the evidence and judge the credibility of the witnesses. Appellant's Br. p. 17-24. Particularly, Kemper questions the reliability and motivations of those who testified at trial, including Morgan and Abdullah.[4] *Id.*

---

[4] On pages seventeen through twenty-four of his brief, Kemper questions the reliability of testimony of three of the State's witnesses. Kemper presents this as a sufficiency argument related to all convictions. However, even if we were able to entertain such arguments, because Kemper has failed to indicate how his arguments relate to the sufficiency of the evidence as to the elements of any particular conviction, we find that he has

We reiterate that the jury is the sole judge of a witness's credibility. *Wright v. State*, 12 N.E.3d 314, 319-20 (Ind. Ct. App. 2014). Consequently, we may not entertain such arguments on appeal.

[18] Kemper next focuses on the sufficiency of the evidence used to prove that he and Abdullah conspired to commit robbery. The crime of conspiracy to commit a felony has three elements: (1) the intent to commit a felony, (2) an agreement with another person to commit a felony, and (3) an overt act in furtherance of the agreement, performed by either the defendant or the person with whom the defendant has entered into the agreement. I.C. § 35-41-5-2; *Owens v. State*, 929 N.E.2d 754, 756 (Ind. 2010). Kemper argues that the State presented no evidence from which the jury could conclude that he and Abdullah agreed to commit robbery.

[19] To prove conspiracy, "'there must be evidence to prove the agreement directly, or such a state of facts that an agreement may be legally inferred.'" *Frias v. State*, 547 N.E.2d 809, 812 (Ind. 1989) (quoting *Robertson v. State*, 231 Ind. 368, 370, 108 N.E.2d 711, 712 (1952)). The State is not required to prove the existence of an express agreement. *Porter v. State*, 715 N.E.2d 868, 870 (Ind. 1999). "'It is sufficient if the minds of the parties meet understandably to bring

waived such arguments for failure to adequately present the issues and support his arguments with cogent reasoning. Ind. Appellate Rule 46(A)(8)(a).

about an intelligent and deliberate agreement to commit the offense.'" *Id.* at 870-71 (quoting *Williams v. State*, 274 Ind. 94, 96, 409 N.E.2d 571, 573 (1980)).

[20] The State argues that it presented sufficient circumstantial evidence from which an agreement could be reasonably inferred. The State points to the fact that Kemper and Abdullah arrived at the BP station in the same vehicle and that Abdullah drove Kemper away from the scene. Appellee's Br. p. 19. The State also points out that the two exchanged text messages with each other throughout the evening and that, after the crime was committed, Kemper "delivered instructions to Abdullah on how to evade capture." *Id.*

[21] We do not believe that a reasonable jury could have inferred the existence of an agreement from this evidence. Although the State presented evidence that the two exchanged text messages on the night of the robbery, these messages indicate nothing more than that the two planned to meet. State's Ex. 29. Furthermore, Kemper's calls to Abdullah telling him to get out of the vehicle after the two had crashed into the woods do not tend to indicate the existence of a prior agreement. If anything, the chaotic manner in which the two escaped indicates a lack of planning and, therefore, a lack of agreement.

[22] We also note Abdullah's testimony that he was not aware that Kemper planned on robbing the BP station until Kemper pulled a gun out of his pocket and exited the car. Tr. p. 201-02. This testimony was uncontradicted. The State argues that the jury was free to disregard this testimony. Appellee's Br. p. 20. This is certainly true. However, while the jury was free to disregard any

evidence pointing against the existence of an agreement, it was left with insufficient evidence pointing to the existence of an agreement. We find that, from the evidence presented, a reasonable jury could not conclude beyond a reasonable doubt that Kemper and Abdullah had agreed to rob the BP station.

[23] The State next argues that the jury could infer that the two had agreed to commit the robbery from the fact that Abdullah pleaded guilty to the crime of conspiracy and testified that he had done so. In addition to Abdullah's testimony, the guilty plea itself was also entered into evidence. The State argues that, once the jury was aware that Abdullah had pleaded guilty to conspiracy to commit robbery, "[a]ll that would have remained for the jury to answer would be the question: with whom?" *Id.* at 19.

[24] This Court has previously determined that a coconspirator's plea of guilty is not admissible as substantive evidence of the defendant's guilt. This Court has explained:

> "From the common sense point of view a plea of guilty by an alleged fellow conspirator is highly relevant upon the question of the guilt of another alleged conspirator. If A's admission that he conspired with B is believed, it is pretty hard to avoid the conclusion that B must have conspired with A. This is one of the cases, therefore, where evidence logically probative is to be excluded because of some countervailing policy. There are many such instances in the law. *See* 4 Wigmore, Evidence § 1171 *et seq.* (3d ed. 1940).
>
> "The foundation of the countervailing policy is the right of every defendant to stand or fall with the proof of the charge made against him, not against somebody else. Acquittal of an alleged fellow conspirator is not evidence for a man being tried for conspiracy. So, likewise, conviction of an alleged fellow conspirator after a trial is not

admissible as against one now being charged. The defendant had a right to have his guilt or innocence determined by the evidence presented against him, not by what has happened with regard to a criminal prosecution against someone else."

*Berridge v. State*, 168 Ind. App. 22, 32, 340 N.E.2d 816, 822-23 (1976) (quoting *U.S. v. Toner*, 173 F.2d 140, 142 (3rd Cir. 1949)).

[25] In this case, Abdullah's guilty plea was entered into evidence and Abdullah was called to testify. During his testimony, Abdullah acknowledged that he had pleaded guilty to conspiracy. Tr. p. 178-79. However, after acknowledging his plea, Abdullah did not go on to testify that he was, in fact, involved in a conspiracy. Particularly, he did not testify that he and Kemper had agreed to rob the BP station. In fact, Abdullah's testimony indicates that there was no such agreement. Tr. p. 201-02. Therefore, the jury was left with only Abdullah's guilty plea, and his acknowledgment of that plea, from which to infer the existence of a conspiracy.

[26] For the above-mentioned reasons, Abdullah's plea of guilty cannot be considered as substantive evidence as to any element of the conspiracy charge brought against Kemper. As the remaining evidence was insufficient to allow a jury to conclude beyond a reasonable doubt that Kemper and Abdullah had

agreed to rob the BP station, Kemper's conviction for conspiracy to commit robbery while armed with a deadly weapon must be vacated.[5]

# III. Appropriateness of Sentence

[27] Kemper next challenges the appropriateness of his sentence. Under Indiana Appellate Rule 7(B), "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The burden is on the defendant to persuade us that his sentence is inappropriate. *Estrada v. State*, 969 N.E.2d 1032, 1047 (Ind. Ct. App. 2012).

[28] Kemper was convicted of robbery resulting in bodily injury, conspiracy to commit robbery while armed with a deadly weapon, and unlawful possession of a firearm by a serious violent felon. At the time Kemper committed these offenses, they were all class B felonies, which carry a potential sentence of six to twenty years, with an advisory sentence of ten years. Ind. Code § 35-50-2-5. Kemper was sentenced to the maximum term of twenty years on all counts and all sentences were ordered to be served consecutively, resulting in a total sentence of sixty years. Because we have determined that Kemper's conviction

---

[5] Kemper makes two double jeopardy arguments that both relate to his conspiracy conviction. Appellant's Br. p. 31. Because we have determined that Kemper's conviction for conspiracy cannot stand, we need not address these arguments. Nor do we need to address Kemper's argument that the State presented insufficient evidence to support his conviction for aggravated battery, as the trial court has already vacated this conviction. *Id.* at 26; Appellant's App. p. 352.

and sentence for conspiracy to commit robbery while armed with a deadly weapon must be vacated, we analyze the appropriateness of Kemper's total sentence of forty years for his two remaining class B felony convictions.

[29] Kemper focuses primarily on the consecutive nature of his sentences. Appellant's Br. p. 35. The decision to impose consecutive sentences rests within the discretion of the trial court. *Parks v. State*, 513 N.E.2d 170, 172 (Ind. 1987). A trial court may impose consecutive sentences if warranted by the aggravating circumstances. *Monroe v. State*, 886 N.E.2d 578, 579 (Ind. 2008). However, "before a trial court can impose a consecutive sentence, it must articulate, explain, and evaluate the aggravating circumstances that support the sentence." *Id.* at 580.

[30] Regarding the nature of the offense, the trial court noted that Kemper shot Lafollette, who had offered no resistance and was completely helpless, "within a few seconds after confronting him and for no apparent reason." Appellant's App. p. 348. Regarding Kemper's character, the trial court found that, prior to the instant case, Kemper had at least five felony convictions, including breaking and entering, carrying a concealed weapon, having weapons under disability, and two convictions for aggravated burglary. The trial court found it significant that Kemper had two prior offenses involving the use or possession of firearms. This led it to conclude that there was a significant danger that Kemper would commit future crimes. The trial court found no mitigating factors and determined that the aggravating factors were sufficient to justify enhanced sentences running consecutively. *Id.* at 350.

[31]     In light of the aggravating factors present in this case, as well as the complete lack of mitigating factors, we do not believe that Kemper's enhanced consecutive sentences for robbery resulting in bodily injury and unlawful possession of a firearm by a serious violent felon are inappropriate. The aggravating factors before the trial court were substantial and indicate a total lack of respect for the law on Kemper's part. We agree with the trial court's conclusion that Kemper's history of crimes involving firearms suggests that he is likely to commit violent crimes in the future. Accordingly, we cannot say that Kemper's total sentence of forty years is inappropriate in light of the nature of the offenses and his character.

[32]     The judgment of the trial court is reversed and remanded with instructions to vacate Kemper's conviction and sentence for conspiracy to commit robbery while armed with a deadly weapon. The judgment of the trial court as to Kemper's convictions and sentences for robbery resulting in bodily injury and unlawful possession of a firearm by a serious violent felon is affirmed.

Najam, J., and Friedlander, J., concur.